ERNEST G. ADAMS *et al. Trs. vs.* ALIDA E. S. WHITMARSH *et al.*

JANUARY 9, 1941.

PRESENT: Flynn, C. J., Moss, Capotosto, Baker and Condon, JJ.

54

CAPOTOSTO, J.   This bill in equity by trustees for instructions was certified to this court under the provisions of general laws 1938, chapter 545, § 7.  It is brought by the trustees under the will of Samuel S. Sprague, late of the city of Providence, deceased. The bill prays for instructions respecting the disposition of a dividend of $19,353.40, which came into the trust estate in 1936 from a corporation in which the trustees held stock.  The trustees ask whether they should treat the dividend as an addition to the *corpus* of the trust estate, or as income of such trust payable to the equitable life tenant, or as a fund to be allocated partly to principal and partly to income.

This is the second time that the instant cause has been certified to us for determination of the foregoing questions. On the first certification we remanded the cause to the superior court without answering those questions, because the record disclosed an insufficiency of evidence in certain necessary and material particulars.  *Adams* v. *Whitmarsh*, 65 R. I. 351, 14 A. 2d. 679.  The parties have since sufficiently amplified such record in the particulars pointed out in our previous opinion.

The record now before us consists of the testimony of a witness in two depositions and of certain exhibits introduced

in evidence. This witness is the attorney who has been legal adviser to the trustees for the past ten or eleven years, and legal adviser to the two corporations hereinafter mentioned. He was also vice-president and a director in these two corporations until the liquidation of one of them in 1936, and held those offices in the other when this bill was brought.

The facts, which are undisputed, present a number of unusual and novel situations. Being a case of first impression, we confine our decision strictly to the peculiar circumstances in this cause. We do not wish to be understood as expressing any opinion, directly or indirectly, approving or disapproving the manner, ways and means that the trustees employed in carrying out their duties as trustees under the trust. The parties, with full knowledge over the years of such matters, raise no question in this cause as to the propriety or impropriety of the methods adopted by the trustees in administering the trust, which methods were and, for all that appears, still are satisfactory to them.

The complainants, Ernest G. Adams and the Rhode Island Hospital Trust Company, are the present trustees under the will of Samuel S. Sprague. The respondent Alida E. S. Whitmarsh, hereinafter referred to as Mrs. Whitmarsh, is the daughter of the testator and the life tenant of the trust here involved. The respondents Esther A. Whitmarsh-Phillips and Martha W. Tolman are the two daughters of Mrs. Whitmarsh, while the remaining respondents, Henry Allen Whitmarsh Phillips, Alida Sprague Tolman, Martha Bronson Tolman and Ruth Stevens Tolman, are the grandchildren of said Mrs. Whitmarsh. The last six respondents mentioned are the only persons now ascertainable who have any interest in the remainder of the trust estate after the termination of Mrs. Whitmarsh's life estate. Four of these respondents, being minors, are represented by a guardian *ad litem*, who was also duly appointed as the representative of contingent interests of persons not in being or not ascertainable.

The life tenant prays that the dividend in question be paid to her as income of the trust. The remaindermen of full age pray that such dividend be added to the principal of the trust. The guardian *ad litem,* who also represents all contingent and unascertained interests, submits the interests of those he represents to the protection of the court.

Samuel S. Sprague, the testator and father of the respondent Mrs. Whitmarsh, died on November 11, 1896. His will was duly probated in Providence on December 8, 1896. In his will the testator made various specific bequests and dispositions with reference to the use of his residence by his widow, Adeline T. Sprague. Subject to these provisions, he devised and bequeathed one-fifth of his residuary estate to the trustees named therein "to keep the same safely invested in good safe interest bearing stocks, bonds or other productive estate, and to collect and receive the rents, profits, dividends and income thereof from time to time", and "to pay over the net income" therefrom to his daughter, the respondent Mrs. Whitmarsh, for and during her life. Upon her decease, he directed that the trust estate be transferred to such person or persons and in such manner as she should by will appoint, and, in default of such appointment, to her issue and the heirs, executors and administrators of such issue *per stirpes* and not *per capita,* and, for want of such issue, to the persons who would be her heirs and next of kin.

The testator, Samuel S. Sprague, devised and bequeathed another one-fifth of his residuary estate to the trustees named therein, upon trust to pay the net income therefrom to his widow, Adeline T. Sprague, during her lifetime, and, upon her death, he provided that one-fourth of this one-fifth be transferred to the trust for the benefit of his daughter, the respondent Mrs. Whitmarsh.

The widow, Adeline T. Sprague, died January 25, 1920. When these proceedings were instituted, two fifth proportions of the residuary estate under the will of Samuel S.

Sprague were subject to the above-mentioned trust provisions.

In 1902 the former trustees incorporated The Narragansett Association, apparently for convenience in administering the trust. The chief asset of this corporation was certain real estate in the city of Minneapolis, which the corporation owned and had leased under a long term lease on a net rental basis increasing at stipulated times. It acquired such asset from Security Company, another Sprague family corporation.

In 1913 the then trustees, again apparently for convenience of administration, incorporated Utility Company to take over the assets held by them under the terms of the will. At that time the trustees transferred those assets to Utility Company and in return therefor that corporation issued to them, as trustees, all of its capital stock, 1200 shares.

The officers and directors of The Narragansett Association and Utility Company are not specifically mentioned in the testimony before us, which simply states that the directors of the two companies were identical at all times and that the officers thereof were not identical up to 1929, but that they were identical after that date. The stockholders of these two companies were never the same, although there was always "some degree of identity between them". A large portion of the stock of Utility Company was held by "trust funds".

Henry S. Sprague, one of the original trustees of the trust here involved, was treasurer of both corporations until his death in 1929. To this extent only did the trustees of this trust participate in the control and management of the two corporations under consideration. After the death of Henry S. Sprague the trustees were mere stockholders of Utility Company.

It also appears in the two depositions before us by the same deponent, whose relations with both The Narragansett Association and Utility Company are indicated earlier in this opinion, that since shortly after the death of Henry S. Sprague the "decision of all questions of policy in those two corporations has devolved largely on Mr. Raymond H. Trott, the other vice president, and myself"; that they "became responsible for the management of Utility Company". There is no further explanation of this broad and ambiguous language.

Following the death of the widow, Adeline T. Sprague, in 1920, the 1200 shares, which the trustees had received from Utility Company, were reduced to 1197 shares in order to facilitate an even division of that stock among the remaindermen under the Adeline T. Sprague trust. In this division, on August 10, 1920, the trust for the respondent Mrs. Whitmarsh received 399 shares of Utility Company stock. On September 30, 1930, this trust received 19 additional shares of that stock, so that on December 28, 1936, which is an important date in the instant cause, this trust held 418 shares of Utility Company stock.

On December 9, 1936, Utility Company was the owner of 426 shares of The Narragansett Association, hereinbefore mentioned. Upon its organization in 1913, it acquired 104 shares of this stock in that year, and it received the remaining 322 shares by way of stock dividends on November 15, 1922 and August 1, 1930.

On December 5, 1936, the stockholders of The Narragansett Association voted to liquidate the corporation and it was completely liquidated on December 9, 1936. The liquidation was effected by conveying the real estate of the corporation to its stockholders in the proportion of their respective holdings of stock; by a distribution in cash to the stockholders; and by transfer to the Rhode Island Hospital Trust

Company as agent for the stockholders of the remaining assets of the corporation.

As a result of this liquidation, Utility Company realized a profit of $67,734.36 on its shares of The Narragansett Association stock. This profit was computed as follows: The interest of Utility Company in the real estate of The Narragansett Association was valued at $116,776.31, this sum being based upon a valuation of $1,000,000 for that real estate when sold on liquidation. A cash distribution of $8,387.94, and a further sum of $10,857.55, representing Utility Company's interest in other assets of The Narragansett Association, were added to said $116,776.31, making a total amount of $136,021.80 received by Utility Company in the liquidation of The Narragansett Association. Utility Company's profit of $67,734.36 on its shares of The Narragansett Association stock represents the difference between the $136,021.80, which Utility Company received upon such liquidation, and the estimated actual value of the 104 shares of The Narragansett Association stock originally acquired by Utility Company in 1913.

In 1913 the valuation of the real estate of The Narragansett Association was fixed at $625,000, such sum being computed on the net rental value of that property at 5% for the term of the lease. Based upon this valuation, the estimated actual value of the 104 shares of The Narragansett Association stock held by Utility Company was $68,287.44. The difference between the value of such stock thus fixed in 1913 and the amount realized by Utility Company in 1936 upon liquidation of The Narragansett Association, that is, $136,021.80, is the profit of $67,734.36 above mentioned.

On December 28, 1936, Utility Company paid three dividends. A dividend of $2.42 a share represented the substantial equivalent of the then undistributed earnings for 1936. A second or extraordinary dividend of $7.11 a share represented the substantial equivalent of the estimated net

earnings for the following year, 1937. The third, also called an extraordinary dividend, was a dividend of $46.30 a share. The total amount of this third dividend was approximately $10,000 less than the profit of $67,734.36 derived from the liquidation of The Narragansett Association stock.

At the time that these three dividends were paid, December 28, 1936, the dividend of $46.30 a share payable to the trustees for the trust here under consideration amounted to $19,353.40. The disposition of this sum by Utility Company is the basis for the instant bill for instructions. It is clear that these three dividends, particularly the dividend of $46.30 a share, were declared and paid by Utility Company to avoid payment of certain federal taxes for 1936. We quote from the original deposition in this cause. "At that time there was a very large tax under the Revenue Act of 1936 on any undistributed income or profits of corporations. It was really in the nature of a penalty tax for not distributing the earnings and profits by way of dividends. Furthermore Utility Company was a personal holding company within the meaning of the Revenue Act of 1936 and personal holding companies were subject to a penalty tax—a special penalty tax for failing to distribute all their income and profits". This testimony, fairly considered, shows that the profit of $67,734.36 from The Narragansett Association stock was considered by Utility Company as surplus that could be properly treated as income and distributed as such in the form of a cash dividend.

In its letter of December 28, 1936 to its stockholders announcing payment of the three above-mentioned dividends, Utility Company states that the dividend of $46.30 a share "constitutes a distribution of the profit realized by the corporation upon the liquidation of The Narragansett Association. This dividend should, of course, be regarded by the stockholders as capital and not as income". The reason why Utility Company so advised its stockholders does not

appear. It may have been for bookkeeping or tax purposes. Whatever the reason, its statement as to how such dividend should "be regarded" by the stockholders is of no consequence, as the true character of that dividend depends upon the manner in which Utility Company actually dealt with the sum from which that dividend was paid. Hereafter, the word "dividend" will refer to this dividend of $46.30 a share.

The life tenant, the respondent Mrs. Whitmarsh, made no objection to the dividend being treated by the trustees as suggested in the letter of Utility Company until the internal revenue agent in charge of income tax collections for this district claimed that the dividend was taxable to her individually as income for the year 1936. She thereupon changed her position and now demands that the dividend be paid to her, thus avoiding the possibility of the dividend being taxed to her, without her having received the amount of the dividend from the trustees.

Under the view that we take of the peculiar circumstances in this cause, we deem it unnecessary to consider the conflicting contentions of whether The Narragansett Association and Utility Company were trading or investment corporations in law. The peculiar factual situations appearing in the record before us, which result from the trustees' management of the trust, with the apparent knowledge and consent of the parties in interest, make the instant cause a most unusual one.

As we indicated early in this opinion, it is not our province in this cause to determine the propriety or right of trustees to manage a trust through the medium of a separate and distinct corporation, especially if the trustees do not have full and exclusive control in managing the corporation's business. In the instant cause, the trustees saw fit to set up Utility Company as the medium through which to discharge their duties as trustees, with the apparent knowledge and

consent over many years of the parties in interest. Having knowingly adopted such means for their own purposes, the trustees and those in interest are bound by their acts and cannot now deny, or disregard as of no importance, the existence of Utility Company as a separate and distinct legal entity, entitled to carry on its business according to law.

In determining the controlling issue in this cause, it is important to keep in mind that the trustees here are mere stockholders in Utility Company, which corporation in turn was a stockholder in The Narragansett Association. In urging the contention that the amount of the dividend herein involved should be treated as principal and not as income, stress is laid upon the fact that The Narragansett Association was liquidated; that Utility Company held stock in that corporation as part of its capital holdings; that the enhanced value of the stock so held was principal in the hands of Utility Company; and that this enhanced value retained that character when Utility Company passed on a portion of the amount received for such stock to the trustees as stockholders of Utility Company.

If the trustees had held stock in The Narragansett Association, then it would seem that its capital assets in liquidation might be held to be capital and not income. See *Rhode Island Hospital Trust Co.* v. *Peckham*, 42 R. I. 365. But this was not the fact in the instant cause. The trustees were not stockholders of The Narragansett Association, the liquidating company. It was Utility Company that held some of the stock in The Narragansett Association. The character of an undistributed surplus in the hands of Utility Company, representing the profit realized by that company in the liquidation of The Narragansett Association, is not of controlling force in this cause. The decisive question before us is: What was the true character of the cash dividend paid out of such surplus by Utility Company? This is to be determined by the special circumstances surrounding that particular payment.

In the instant cause, which differs from any case that we have been able to find or that has been called to our attention, we have an existing, active and solvent corporation intervening between the trustees and the corporation that went into liquidation. It is clear from the record before us that the capital investment of Utility Company was not impaired or affected in any way by the dividend which was declared out of surplus profit by that company. This record shows that Utility Company allocated and treated as capital so much of the sum that it received from The Narragansett Association as, in the opinion of its directors, adequately and fully represented a fair valuation of The Narragansett Association stock in the capital holdings of Utility Company.

It is important to note that when The Narragansett Association went into liquidation in December 1936, the books of Utility Company carried the 104 shares of The Narragansett Association stock held by Utility Company at the par value of $100 a share, or $10,400. But while such stock was so carried on these books, Utility Company retained $68,-287.44, which was the estimated actual value of that stock, out of the sum that it received upon the liquidation of The Narragansett Association. The $68,287.44 thus retained was substituted for The Narragansett Association stock in the capital holdings of Utility Company. The dividend here in question was then declared by the directors of Utility Company out of the surplus remaining after thus fully protecting its capital. The directors in so acting effected a severance of capital from income.

The legal concept of income implies a severance from capital. Broadly speaking, unless the corporation itself be in liquidation, profit from the sale of a capital asset may enter into earnings or surplus account and is a proper source for dividends. *National Newark &c., Co.* v. *Durant Motor Co.*, 124 N. J. Eq. 213; 18 C. J. Sec. 1101, Corporations, § 462. It is within the power of the directors of a corpora-

tion, acting legally and in good faith, "to change the surplus from capital to income by declaring a cash dividend out of the same." *Rhode Island Hospital Trust Co.* v. *Tucker,* 51 R. I. 507, 511. Whether a cash dividend is capital or income depends upon the facts in each case. In the circumstances of the instant cause, we are of the opinion that the dividend in question was income.

The cause at bar is clearly distinguishable in its facts from *Rhode Island Hospital Trust Co.* v. *Bradley,* 41 R. I. 174. In that case the trustee held stock in certain land companies, whose capital consisted solely of land which they offered for sale. As the land was sold, the capital of these companies proportionately diminished. In the circumstances, this court held that dividends paid to the trustee out of money received from the sale of such land were dividends in liquidation of capital of the land companies, and not ordinary cash dividends out of earnings or surplus which did not impair capital. Accordingly, the dividends in that case were declared to be capital and not income. We deem it unnecessary to point out other fundamental factual differences of controlling force between the *Bradley* case and the cause at bar, as such differences are obvious upon a reading of these two cases.

In our view of the undisputed and peculiar facts in the instant cause, we are of the opinion, for the reasons stated above, that the dividend under consideration was income and not capital; and that as such the sum in question here belongs to the life tenant, the respondent Mrs. Whitmarsh. The trustees are, therefore, so advised.

On January 15, 1941, the parties may present for our approval a form of decree in accordance with this opinion.

Moss, J., dissenting. I am unable to concur in the opinion of the court, because in my judgment there is no evidence which justifies the conclusion that the entire cash dividend

of $46.30 per share, which was received from Utility Company by the trustees, should be treated by them as income of the trust estate.

This dividend, together with other similar dividends paid by Utility Company to its other stockholders, represented by far the greater part of the profit which was received by Utility Company, on its holdings of shares of stock of The Narragansett Association, when the entire assets of the latter corporation were distributed *pro rata* among its stockholders in liquidation of its affairs.

As shown in the foregoing opinion of the court, the original holding by Utility Company of shares of stock of The Narragansett Association, consisting of 104 shares, was received by the former corporation in July 1913 from the trustees of the trust created for the benefit of Adeline T. Sprague under the will of Samuel S. Sprague and was paid for, to those trustees, in shares of stock of Utility Company.

At this time and throughout its existence, by far the greatest part of the assets of The Narragansett Association consisted of its interest, as sole lessor under a long term lease, in certain real property in the city of Minneapolis, Minnesota.

When the liquidating dividends from that corporation were received by Utility Company in December 1936, it became desirable to ascertain the actual value in July 1913 of the 104 shares of the stock of the former corporation which were owned by the latter corporation; and this was determined to have been $656.61 per share, based on a valuation of $625,000 for the interest of the former corporation under the aforesaid lease and a valuation of about $32,900 for its securities, and making the total value of the 104 shares $68,287.44. There is no evidence that the value was any different, when, on August 10, 1920, the trustees under the trust for the benefit of Mrs. Whitmarsh received 399

shares of the stock of Utility Company from the trustees of the trust for the benefit of her mother.

At that time that corporation's holding of shares of stock of The Narragansett Association was still 104 shares. But the former corporation received from the latter corporation a stock dividend of 312 shares in November 1922 and another one of 10 shares in August 1930, making the total amount of such stock held by the former corporation thereafter and until the final liquidation of the latter corporation 426 shares. There is nothing in the evidence in this case to indicate that any part of these stock dividends represented earnings of the latter corporation; and they therefore must be assumed to have represented only capital of such corporation.

When, near the end of 1936, The Narragansett Association transferred to its stockholders, including Utility Company, all its real estate, as a part of its plan of total liquidation of its assets, this real estate consisted of its interest as lessor under the above-mentioned lease of real property in Minneapolis. There is no evidence that any earnings of The Narragansett Association had been used to increase the value of this real estate; but it had greatly increased in its market value, apparently because of changing conditions as to such real property in Minneapolis and as to the market values of such income-producing investments.

Therefore it seems clear to me that when this real estate was transferred by The Narragansett Association to its stockholders, in shares proportional to their respective holdings of its stock, it was properly transferred and received as being by far the greater part of the *capital* of the former corporation and as not including any of its earnings. Hence it seems clear to me that when this real estate was sold and conveyed by these stockholders for $1,000,000, the proportionate part which was paid to Utility Company, as one of the stockholders, out of that total sale price, namely, $116,-

776.31, was properly paid and received as its distributive share of the main *capital asset* of The Narragansett Association and as not including any of the *earnings* of that corporation.

This being so, it necessarily follows, in my judgment, that Utility Company was justified in treating, and indeed was bound to treat, *all* that amount as being a part of its capital. What it then did was that it separated out from that amount the sum of $68,287.44, which, as above stated, was the estimated total value, in July 1913 and probably on August 10, 1920, of the holdings of that corporation in the shares of stock of The Narragansett Association, and retained that as a part of its own capital for the future; and that it then paid out all the rest of the above-named sum of $116,776.31, namely, $48,488.87, as a part of the extraordinary dividend of $46.30 per share which on December 28, 1936 it paid out to its stockholders, totaling $57,736.10, and of which $19,-353.40 went to the complainant trustees.

From the evidence, then, and bearing in mind that evidently these two corporations were not trading but investment corporations, it seems clear to me that Utility Company, in paying out to its stockholders the sum of $57,736.10, as above stated, was justified, at least to the extent of the above sum of $48,488.87, in paying it out, as it did, as being a dividend from *principal* only; and that therefore the trustees were bound to treat as principal of their trust estate at least so much of the total dividend of $19,353.40, received by them, as constituted their proportionate share of the above-mentioned sum of $48,488.87, namely, $16,253.77. See *Miller* v. *Payne*, 150 Wis. 354, 376-379, 136 N. W. 811, 818-820.

Therefore, I feel obliged to dissent from the conclusion arrived at in the foregoing opinion of the court that the entire dividend of $19,353.40, received by the trustees from

Utility Company, was *income* of the trust estate and not capital.

As to such part of that dividend as exceeded the above sum of $16,253.77, namely, $3099.63, the matter is by no means so clear to me. That was paid by Utility Company to the trustees as being wholly a part of the capital of that corporation; but it actually was the trustees' proportionate part of the sum of $9247.23, which is the difference between the above-mentioned sums of $48,488.87 and $57,736.10 and which apparently was not received by Utility Company from the proceeds of the sale of the real estate transferred by The Narragansett Association to its stockholders, but was wholly or largely the former corporation's proportionate part of the proceeds from the sale by Rhode Island Hospital Trust Company of the securities transferred to it by The Narragansett Association for the benefit of the latter's stockholders; or it may have been wholly or largely money received by Utility Company as its proportionate part of the cash liquidating dividend paid by The Narragansett Association out of money in its treasury.

In this connection it is of interest that the evidence shows that in 1913 the real estate of The Narragansett Association constituted about 95% of its total assets and that in 1936 it constituted only about 86% of that corporation's total assets. Whether any of this very considerable increase in personal property assets represented income which had been received in the interval and accumulated is not shown by the evidence.

To the extent that the above sum of $9247.23 came to Utility Company from such personal property assets of The Narragansett Association it may, so far as the evidence shows, have come, in whole or in part, from such accumulated income of the latter corporation which had never been made a part of its capital. If any part of this sum did come to Utility Company from such income, I am strongly in-

clined to believe that such part should have been treated by Utility Company as income and distributed to its stockholders as such; and that such proportionate share of that part as was received by the complainant trustees in the dividend of $46.30 per share from that corporation should be treated by them as *income* from the trust estate, even though, in paying to them that dividend, Utility Company described it as a dividend paid from capital.

The reason why I am strongly inclined so to believe depends in large part upon the facts, shown by the evidence, that the two corporations were, and had been for many years, practically under the same management and control, and that their affairs were and had been largely, if not entirely, supervised by the trustees or their representatives, who therefore might fairly be taken to have had actual or constructive notice of the true nature of the dividend to them which is in question in this cause.

But there is no good reason for pursuing this particular subject further, since the evidence does not make it at all clear whether the securities transferred and the cash paid out by The Narragansett Association in liquidation really constituted principal or income of that corporation and the majority of this court has determined, for a different reason, that *all* of the dividend in question in this cause constituted *income* of the trust estate.

*Gurney Edwards, Henry B. Gardner, Jr., Edwards & Angell,* for complainants.

*Littlefield, Otis & Knowles, John C. Knowles,* for respondent Alida E. S. Whitmarsh.

*Baker & Skinner,* for respondents Esther A. Whitmarsh-Phillips and Martha W. Tolman.

*F. Snowden Skinner,* guardian *ad litem.*