## Summerfield Estate

*John Blessing,* for exceptant.

*Edmund P. Hannum* and *Grubb, Guest & Littleton,* contra.

SHOYER, J., March 16, 1962.—A single, narrow issue is before us; namely, did testatrix intend that her testamentary life tenants should receive distribution of capital gains, or not? We are agreed that her will has clearly provided for the distribution of such gains as income.

Testatrix, who died May 29, 1954, gave her residuary estate to her trustees "for the uses and purposes following: (a) To receive, hold, invest and reinvest the same in such stocks, bonds or other goods and marketable securities, not necessarily legal, as in their judgment are to the best interest of my estate. (b) To collect and receive the dividends, issues, profits and income (hereinafter jointly referred to as 'income') therefrom derived, and, after deducting therefrom all necessary expenses of administration (1) to pay the net income in semi-annual installments unto my cousin, MRS. EDNA McCARGO . . . for and during the period of her life . . ."

Included in the residuary estate were 300 shares of Incorporated Investors, a regulated investment company, commonly known as a "mutual fund", dealing in the purchase and sale of marketable securities for long term investment. Dividends and interest received from its large portfolio of diversified securities comprise Incorporated Investors' chief source of income. This income is periodically distributed proportionally among shareholders in the form of ordinary dividends. Capital gains realized on sales of securities within the fund are also distributed at least annually, either voluntarily or by operation of law. These capital gain

distributions are given favorable treatment by the Federal income tax laws in the hands of the shareholders, in that they are subject to tax as long term capital gains rather than as ordinary income.

During the period of this accounting, trustee received 274 shares of Incorporated Investors stock "in payment of distribution from net gain on investment securities," which shares have a current market value of $8.93 per share, or $2,446.82. These shares were "capital gain" distributions by the mutual fund, which were paid in stock rather than in cash at the election of the shareholder trustee. The action of the mutual fund in granting this option to trustee stamps these distributions as "income" under the Principal and Income Act of July 3, 1947, P. L. 1283, sec. 5(1), 20 PS §3470.5(1).

The guardian ad litem, who represents the minor remaindermen, has filed exceptions to the order of the learned auditing judge awarding these 274 shares to the life tenant as income.

It will be noted that the will directs payment of "net income" to the life tenant. By testatrix' own definition, "profits" are included in net income. Quay's Estate, 253 Pa. 80 (1916), holds that a testamentary direction to pay "income and profits" to a life tenant includes capital gain arising from the sale of decedent-owned stock. Our Supreme Court there affirmed on the opinion of the lower court, which based its holding on testator's intent as follows (page 83) : "As a general rule, a sum received over and above the appraisement price of stocks belongs to the corpus and is not to be treated as profits. However, in any case reference must be had to the language of the will in dealing with such property . . ." To the same effect is Park's Estate, 173 Pa. 190 (1896).

The guardian ad litem has argued strenuously that we should refrain from basing our award on the Prin-

cipal and Income Act, because this type of investment and distribution was not within the contemplation of the legislature, and the mutual fund is really acting as an agent for trustee in investing his corpus for him as he himself would do if he had the resources, facilities and experience of the investment company.

Because testatrix has so clearly and precisely defined the extent of her desired distribution to the life tenant, we find recourse to any statute unnecessary. "It is now hornbook law (1) that the testator's intent is the polestar and must prevail . . .": Burleigh Estate, 405 Pa. 373, 376 (1961). Furthermore, the Principal and Income Act expressly provides (section 2) that testator "may himself direct the manner of ascertainment of income and principal and the apportionment of receipts and expenses . . . and such provision and direction, where not otherwise contrary to law [as e.g., an unlawful accumulation], shall control, notwithstanding this act."

The established law of this Commonwealth was well stated by President Judge Klein in Klauder Estate, 17 D. & C. 2d 660, 666 (1959), as follows:

"Public policy has always favored the early distribution of benefits under testamentary writings. The evil which the legislature has attempted to correct by enacting statutes prohibiting accumulations is the control of the dead hand over the distribution of estates for unduly extended period of time. Accumulations are discouraged; early payment of benefits, encouraged."

Had testatrix been less explicit in her directions, we would be no less bound to award these optional dividends to the life tenant. The provisions of section 5(1) of the Principal and Income Act are clear and unequivocal. In our opinion, only amendatory legislation could avoid their effect.

530

Be that as it may, since testatrix has expressly directed distribution as income of all profits, which under relevant Pennsylvania authorities include capital gains, we do not hestitate to dismiss the exceptions of the guardian ad litem and confirm the adjudication absolutely.