MANUFACTURERS HANOVER TRUST COMPANY ET AL., TRUSTEES (ESTATE OF JOSEPH P. BARTRAM) *v.* JOSEPH B. BARTRAM ET AL.

KING, C. J., ALCORN, HOUSE, THIM and RYAN, Js.

Argued February 6—decided March 18, 1969

*John F. Spindler,* with whom, on the brief, was *Francis P. Schiaroli,* for the plaintiffs.

*William J. Murray,* with whom was *John P. Bigda,* for the defendant Sheppard G. Griswold et al.

*William C. Strong* and *Clark M. Whittemore, Jr.,* with whom, on the brief, was *Jack H. Courage,* for the named defendant et al.

KING, C. J. This action takes the form of a reservation from the Superior Court in which trustees seek answers to two stated questions concerning the allocation of certain corporate distributions as between the life beneficiaries and the remaindermen of each of eight trusts. The trustees have withheld allocation of these distributions pending the determination of this proceeding.

The eight trusts in question were created under the will of Joseph P. Bartram, who died in 1948. Six of the trusts originally consisted entirely, and the other two consisted in substantial part, of shares of Bartram Brothers Corporation, a personal holding company. In 1960, Bartram Brothers transferred all of its assets to Broad Street Investing Corporation (hereinafter referred to as Broad Street), receiving in exchange shares of the latter company. The trustees have since retained the stock of Broad Street, which is a regulated investment company under the Investment Company Act of 1940 (54 Stat. 797, as amended, 15 U.S.C. § 80a-3) and is commonly known as a mutual fund. As such, Broad Street's principal business is holding and trading in the stock of other corporations. It periodically distributes dividends to its shareholders which, in accordance with § 852 (b) (3) (C) of the Internal Revenue Code (Title 26, U.S.C.), it designates as either ordinary or capital gains

dividends. It is with the latter dividends that we are presently concerned since the trustees ask for advice as to the allocation of those capital gains dividends received during (1) the period from June 15, 1965, to October 1, 1967, and (2) the period after October 1, 1967.

The will itself is silent in regard to the allocation of capital gains dividends, and, prior to the 1965 amendment of General Statutes § 45-113, such dividends were distributed to the income beneficiaries. Section 45-113 forms part of chapter 782 of the General Statutes, which consists of the Connecticut version, first adopted in 1939, of the Uniform Principal and Income Act of 1931, hereinafter referred to as the Uniform Act. The 1965 amendment comprised §§ 6 (c) and 6 (e) of the 1962 revised Uniform Principal and Income Act and provided, inter alia, that "distributions from capital gains . . . shall be deemed principal". The remaindermen claim that General Statutes § 45-113, as amended by Public Acts 1965, No. 263, governs the allocation of all capital gains dividends of Broad Street received by the trustees after June 15, 1965, the effective date of the amendment. The income beneficiaries, on the other hand, claim that the legislature never intended, and constitutionally could not provide, that this amendment affect trusts created prior to its effective date.

The question is further complicated by a 1967 amendment to § 45-113 which purported to except from the operation of the 1965 amendment the allocation of all capital gains dividends distributed after June 15, 1965 (the effective date of the 1965 amendment) to trustees of trusts the principal of which was set apart prior to January 1, 1961, and which was then invested wholly or in part in the

stock of mutual funds. As to these trusts, the 1967 amendment (Public Acts 1967, No. 535) purported to provide that capital gains dividends should be allocated between the income beneficiaries and the remaindermen in conformity with the law existing immediately prior to June 15, 1965.

## I

The first question reserved deals with the allocation of capital gains dividends received by the trustees from Broad Street between June 15, 1965, and October 1, 1967. The answer to this question necessarily involves a consideration of what the Connecticut law as to allocation of these dividends was immediately prior to the 1965 amendment of General Statutes § 45-113.

Before our adoption of the Uniform Act in 1939, there was little statutory guidance to a trustee in allocating corporate distributions as between an income beneficiary and a remainderman of a trust.[1] Our courts, however, did have occasion to rule on the allocation of various types of corporate distributions, and in doing so we very early adopted the so-called Massachusetts rule. *Spooner* v. *Phillips,* 62 Conn. 62, 72, 24 A. 524. This rule provided that all cash dividends should be allocated to income. *Smith* v. *Dana,* 77 Conn. 543, 548, 60 A. 117; *Minot* v. *Paine,* 99 Mass. 101, 108. Under the rule, cash dividends included all distributions of the surplus assets of a corporation, whether in the form of cash

---

[1] The only corporate distributions regulated by statute were stock dividends and rights to subscribe to new stock, which, under chapter 72 of the Public Acts of 1889, were generally allocable to principal. This statute remained without substantial change through § 4966 of the Revision of 1930 and thereafter until the enactment of the Uniform Act in 1939. Cum. Sup. 1939, c. 254a (§§ 1292e—1301e).

or property, which are made to the shareholders pro rata. *Bishop* v. *Bishop,* 81 Conn. 509, 527, 71 A. 583.

Our leading case of *Smith* v. *Dana,* supra, involved a distribution, in the form of cash dividends, of the proceeds of the sale of a factory which had constituted a substantial segment of the distributing corporation's assets. The court held that this was a cash dividend and as such should be allocated to income, and it refused to find (p. 557) that this dividend fell within the "partial liquidation" exception since it did not result in an impairment of "capital in the strict sense." Id., 554. The court (p. 552) defined capital as "those resources whose dedication to the uses of the corporation is made the foundation for the issuance of certificates of capital stock, and which, as the result of the dedication, become irrevocably devoted to the satisfaction of all the obligations of the corporation". Thus, while no Connecticut cases have dealt specifically with the allocation of capital gains dividends, this and similar cases have, in very broad language, indicated that such dividends, not being an impairment of "capital in the strict sense," would be allocable to income. *Harding* v. *Staples,* 111 Conn. 325, 330, 149 A. 846; *Union & New Haven Trust Co.* v. *Sherwood,* 110 Conn. 150, 163, 147 A. 562; *Union & New Haven Trust Co.* v. *Taintor,* 85 Conn. 452, 455, 83 A. 697.

In 1939, our legislature enacted, with certain changes not material to this appeal, the Uniform Act as originally promulgated in 1931. Cum. Sup. 1939, c. 254a (§§ 1292e—1301e); 9B U.L.A. (1966) 588–614. As was the situation with our case law, this act did not specifically provide for the allocation of capital gains dividends of regulated in-

vestment companies, which were then a relatively new development. As to corporate distributions in general, the act basically codified the principles of our earlier cases in adopting the Massachusetts rule. *Wehrhane* v. *Peyton,* 133 Conn. 478, 501, 52 A.2d 711. The act provided: "[A]ll dividends payable otherwise than in the shares of the corporation itself, including ordinary and extraordinary dividends . . . shall be deemed income. When the trustee shall have the option of receiving a dividend either in cash or in the shares of the declaring corporation, it shall be considered as a cash dividend and deemed income". Cum. Sup. 1939, § 1295e; Uniform Principal and Income Act of 1931 § 5, 9B U.L.A. (1966) 597. Section 1295e remained without change material to the present appeal and constituted § 45-113 of the General Statutes until the enactment of the 1965 amendment.

Courts in other jurisdictions have interpreted the above-quoted provisions of the Uniform Act to require that capital gains dividends be allocated to income. Since these dividends take the form of options to take cash or stock in the mutual fund, they fall within the express provisions of the act. *In re Trust under Will of Gardner,* 266 Minn. 127, 142, 123 N.W.2d 69; *Summerfield Estate,* 26 Pa. D. & C. 2d 526, 528; see *Coates* v. *Coates,* 304 S.W.2d 874, 876 (Mo.). Only one case has come to our attention which was decided under a version of the Uniform Act and which has not applied the quoted provision to capital gains dividends. The decision in that case, *Brock Estate,* 420 Pa. 454, 218 A.2d 281, was based on two independent grounds. The first was that a corporate dividend designated as a "capital gains dividend" was a distribution falling within the provisions of the act requiring that divi-

dends "designated . . . as a return of capital" be allocated to principal. Id., 472. The court's construction of the words "return of capital" is not, however, in accord with the general usage of the term "capital", and the case stands alone in construing a capital gains dividend as a return of capital. See *Smith* v. *Dana,* 77 Conn. 543, 552, 60 A. 117; *Matter of Jackson,* 258 N.Y. 281, 287, 179 N.E. 496; *Adams* v. *Whitmarsh,* 66 R.I. 53, 63, 17 A.2d 433. The other ground on which the court relied was a modification of the Uniform Act unique to Pennsylvania and thus is of no assistance in construing either the Uniform Act or any other act, such as ours, generally patterned upon it. *Brock Estate,* supra, 473.

A number of courts have been called upon to allocate capital gains dividends in the absence of controlling legislation, and in all but one of the cases these dividends have been allocated to income. Generally, these courts have discussed the "conduit theory" and the "separate entity theory". By the former theory, a mutual fund is considered to be merely a conduit through which the trustee himself holds the stock in which the mutual fund is invested. Consequently, the profit which a mutual fund realizes on the sale of appreciated stock is treated exactly as would any capital gain realized by a trust in the sale of a part of its own corpus and thus is allocated to principal. *Tait* v. *Peck,* 346 Mass. 521, 527, 194 N.E.2d 707; see Shattuck, "Capital Gain Distributions—Principal or Income?" 88 Trusts and Estates 160.

Proponents of the "separate entity" theory argue that the mutual fund is an entity engaged in the holding and selling of shares of stock, which constitute its stock in trade much as another business

might deal in shoes or real estate. Any earnings from the sale of its stock in trade which are distributed to its shareholders should be treated the same as the distributed profits of any other corporation. The fact that the federal taxing authorities allow shareholders to treat these dividends as capital gains should not be of controlling importance. *Rosenburg* v. *Lombardi,* 222 Md. 346, 349, 160 A.2d 601; *Matter of Byrne,* 192 Misc. 451, 452, 81 N.Y.S.2d 23; *Lovett Estate,* 78 Pa. D. & C. 21, 24; Bogert, Trusts and Trustees (2d Ed.) § 858. Bogert suggests that the result attained by this theory of allocation seems a better one since the dividends from ordinary income of a mutual fund usually average somewhat less than the normal yield on high-grade corporate stock so that only by paying the capital gains dividends to the income beneficiary can he be provided with a fair income. Bogert, loc. cit. He also intimates that this result accords with the probable intent of most settlors in that they presumably would wish to assure a fair income to their income beneficiaries. See Bogert, loc. cit.

In the light of our Connecticut case law, the persuasive arguments made for allocating capital gains dividends to income, and the provisions of our Uniform Act, we conclude that had this issue been presented immediately prior to June 15, 1965, we would have held that these dividends should be allocated to income. Cases on this problem of allocation are collected in an annotation in 98 A.L.R.2d 511 and in Later Case Service. Incidentally, these trusts were administered, and the allocations were made until the effective date of the 1965 amendment, in accordance with this rule and apparently with the acquiescence of both the income beneficiaries and the remaindermen.

Thus, the 1965 amendment to General Statutes § 45-113 which provided, inter alia, that distributions of regulated investment companies from capital gains should be allocated to principal was clearly a change in our law. Although the amendment does not expressly state whether it is to be applied retroactively, neither party claims that it should be construed to apply to any dividends received by the trustees prior to its effective date, June 15, 1965. The remaindermen, however, do claim that the act should be applied to all distributions received after its effective date, while the income beneficiaries claim that the amendment was intended to affect only those trusts created after its effective date. The amendment in terms applies to "all distributions," which we interpret to mean all distributions made after the effective date of the act. The life beneficiaries ask us to construe "all distributions" as limited to such distributions as are made to trusts created after that date. An examination of the legislative history of our Uniform Act (now General Statutes, c. 782) shows that the claim of the life beneficiaries cannot be sustained. Our Uniform Act, originally enacted in 1939, was expressly applicable "in all cases where a principal has been established after July 1, 1939". Cum. Sup. 1939, § 1293e. In 1949, the legislature amended § 1293e (then Rev. 1949, § 6900) by deleting the restrictive portion of the language quoted above so that the act was made applicable "in all cases". Sup. 1949, § 587a. Thus, the legislature has chosen to apply the Uniform Act to all trusts, no matter when created, so that amendments to that act would, in the absence of an express provision to the contrary, and there is none in the 1965 amendment, also be applicable to all trusts.

The life beneficiaries claim that to apply this amendment to trusts created prior to its effective date would be an unconstitutional interference with their vested rights. This claim is based on the provisions of the fourteenth amendment to the United States constitution which forbids states to deprive persons of property without due process of law. *Parlato* v. *McCarthy*, 136 Conn. 126, 129, 69 A.2d 648. To sustain their claim, the life beneficiaries must first establish that they have been deprived of property. Their rights are derived from the will, which provided that they should receive the "income" from certain trusts for life. The statute does not purport to deprive them of "income" but does change the method of determining income by allocating capital gains dividends to principal rather than to income. Thus, the life beneficiaries are forced to, and do, claim that this gift of "income" gave them a vested right, forever, to the concept of the word "income" which existed under the law on the particular date of the testator's death. The testator, however, chose to use a term which does not have a fixed and unchanging meaning under all circumstances. Through the action of our courts and legislature, the term "income" has had to be reconsidered in the light of the many modern forms of corporate organizations and distributions, certain of which may not have been known when some presently existing trusts were first established. Here, the testator did not embrace the opportunity accorded him in our Uniform Act in General Statutes § 45-111 expressly to provide a method of allocating corporate distributions or to provide that the term "income" should be defined according to the law existing at a particular time, such as the date of the creation of the trusts. Rather, he chose to leave the

allocation of income to be governed by case law and statutes as they might develop. Thus, the gift of "income" does not confer a right that the definition of the term be immutably fixed as that which existed under the law at the testator's death. It necessarily follows that the life beneficiaries were not deprived of any "property", and the legislature was empowered to make reasonable changes in the Uniform Act applicable to trusts created prior to the effective date of those changes. *In re Trust under Will of Gardner,* 266 Minn. 127, 131, 123 N.W.2d 69; *Catherwood Trust,* 405 Pa. 61, 68, 173 A.2d 86; *Will of Allis,* 6 Wis. 2d 1, 12, 94 N.W.2d 226; note, 69 A.L.R.2d 1137, 1141; Bogert, Trusts and Trustees (2d Ed.) § 847, p. 505; 3 Scott, Trusts § 236.3, p. 1986. That this is the view of the draftsmen of the 1962 revision of the Uniform Principal and Income Act is demonstrated by § 14 of that act. 9B U.L.A. (1966) 584.

The 1967 amendment of General Statutes § 45-113 is in terms made applicable to trusts in which the principal has been set apart prior to January 1, 1961, and which were at least partially invested in the stock of regulated investment companies on that date. Public Acts 1967, No. 535 (General Statutes [1967 Sup.] § 45-113[1]). Thus, it is clearly applicable to the trusts involved in this appeal which were created in 1948 and a substantial portion of the principal of which has been invested in Broad Street since 1960. The amendment provides that capital gains dividends received by the trustee after June 15, 1965, should be allocated according to the law existing prior to that date. As has been shown, the capital gains dividends received by the trustee subsequent to June 15, 1965, were governed by the 1965 amendment, which required that they be allo-

cated to principal. The 1967 amendment purports to allocate these same dividends to income. At some point, rights do become vested, and these dividends become "property" which cannot be taken away without due process of law. *Reznor Estate,* 419 Pa. 188, 201, 213 A.2d 791; see *Parlato* v. *McCarthy,* 136 Conn. 126, 129, 69 A.2d 648.

When the trustees received the capital gains dividends from Broad Street, the remaindermen acquired a vested property right in those dividends under the provisions of the 1965 amendment, and the later attempt by the 1967 legislature to change the nature of those dividends or their allocation was constitutionally impermissible and necessarily wholly ineffective.[2] *Reznor Estate,* supra; see Bogert, op. cit. § 847, p. 506.

## II

The second question reserved concerns the allocation of dividends received by the trustees subsequent to October 1, 1967, the effective date of the 1967 amendment.

That amendment, apart from its purported effect on capital gains dividends received by the trustees between June 15, 1965, and October 1, 1967, discussed in the answer to the first question, is even more deeply involved in the answer to the second question.

Basically, the 1967 amendment purports to carve out from the operation of the 1965 amendment cer-

---

[2] In order to answer the questions in the form posed by the trustees, we have taken the date of receipt of the dividends by the trustees as being the date on which the remaindermen's rights in those dividends vested under the 1965 amendment. That date, of course, might vary in accordance with the express provisions of § 45-113 (5) of the General Statutes as to when a dividend accrues to the person entitled to it.

tain capital gains dividends of regulated investment companies distributed to trustees after the effective date of the 1965 act, but it does not purport in any way to affect any other type of corporate distribution. It does not, however, purport to affect all such capital gains dividends of regulated investment companies but only those distributed to the trustee of a trust the principal of which was set apart prior to January 1, 1961, and which on that date comprised, in whole or in part, stock of a regulated investment company. The date January 1, 1961, presumably was selected because of Internal Revenue Ruling 60–385, which in terms was made applicable only to charitable gifts made on or after January 1, 1961. Rev. Rul. 60–385, 1960-2 Cum. Bul. 77.

This ruling purported to disallow any deduction for charitable remainders in certain trusts where capital gains dividends would or could be distributed to income rather than to principal, under the theory that in such situations the present value of the charitable bequest could not be measured by any known formula. See 34 Am. Jur. 2d 784, Federal Taxation (1968), § 8674.

As to capital gains dividends, to which, alone, it is made applicable, the 1967 statute purports to provide that they "shall be allocated to income or principal in the same manner" as they would have been allocated under the law immediately prior to the effective date of the 1965 amendment, that is, June 15, 1965. In other words, the 1967 amendment to the statute attempts, as of October 1, 1967, to establish a particular class of trusts in which the hands of the clock are turned back, as far as allocation is concerned, and as to which any capital gains dividends would be paid to the income beneficiary in-

stead of to the remainderman as the 1965 amendment had provided. The 1967 amendment is so drafted as to be applicable to the particular trusts now before us and, of course, to any other trust existing and holding in its portfolio, on January 1, 1961, stock in a regulated investment company.

While the remaindermen attack the 1967 amendment for ambiguity, we think it is not ambiguous in any area applicable to our decision in this appeal. Indeed its very precision of language made it necessary to hold it unconstitutional in its application to the first question.

Probably the main claim of the remaindermen is that the 1967 amendment unconstitutionally discriminates against them in that it places one class of trusts, including that in the present case, in a different classification from all other classes of trusts, and that there is no reasonable basis for this distinction. More specifically, they claim that arbitrarily to apply a special rule of law to the beneficiaries of a trust the principal of which was set apart prior to January 1, 1961, and which contained stock in a regulated investment company on that date is unconstitutionally discriminatory.

Although reasonable classifications can be made when they are based on reasonable differences, even though the classifications do not precisely accord with the differences, in order for the legislature constitutionally to deal differently with different classes of persons, there must be "some natural and substantial difference germane to the subject and purposes of the legislation between those within the class included and those whom it leaves untouched". *Fountain Park Co.* v. *Hensler,* 199 Ind. 95, 102, 155 N.E. 465; *Lyman* v. *Adorno,* 133 Conn. 511, 521, 52 A.2d 702; *Francis* v. *Fitzpatrick,* 129 Conn. 619, 623,

30 A.2d 552. The only reason for the selection of the arbitrary date of January 1, 1961, which has been suggested by anyone is that Internal Revenue Ruling 60–385 is made applicable only to trusts established on or after that day. But the 1960 Revenue Ruling concerned solely trusts containing certain charitable remainders, while the 1967 amendment operates regardless of the presence or absence of charitable remainders.

The 1965 amendment, taken virtually verbatim from §§ 6 (c) and 6 (e) of the 1962 revised Uniform Principal and Income Act, was enacted by our legislature to meet the problem created by the Internal Revenue Ruling and did meet that problem. The 1967 amendment was wholly unnecessary for any such purpose and, indeed, did not affect that problem.

The only purpose of the 1967 amendment was to restrict and circumscribe the operation of the 1965 amendment insofar as it allocated capital gains dividends of regulated investment companies to principal. And the restriction and curtailment was to trusts which could not be affected by the Internal Revenue Ruling because of the date of their establishment. But, although the Internal Revenue Ruling affected no trusts except those containing charitable remainders, no attempt was made to incorporate such a restriction or curtailment in the 1967 amendment. As a consequence, in any trust having no charitable remainder, as was the case here, the date of January 1, 1961, is purely arbitrary and without any basis for a difference in classification. In such a trust, when a capital gains dividend is received by a trustee, it is allocated to income if the trust was established, and had in its portfolio stock of a regulated investment company, on January 1,

1961, and otherwise to principal under the provisions of the 1965 statute. The right of the General Assembly to make reasonable changes in the allocation of principal and income in already existing trusts does not extend to such arbitrary and discriminatory classifications as that attempted in the 1967 amendment. The 1967 amendment is made applicable on the basis of an arbitrary date. In simple terms, the 1967 amendment purports to take capital gains dividends from the remaindermen and give them to the income beneficiaries because, and only because, the trusts were in existence and contained stock in a regulated investment company on January 1, 1961. Under these circumstances, we find it impossible to justify its discriminatory application to the instant trusts and conclude that the remaindermen have proven, beyond a reasonable doubt, its unconstitutionality in its application to them.[3] *State* v. *DeWitt School, Inc.*, 151 Conn. 631, 634, 201 A.2d 472. The 1965 amendment is thus left, as to the trusts in the instant appeal, unaffected by the 1967 amendment and governs the allocation of capital gains dividends received by the plaintiff trustees after October 1, 1967.

Although the remaindermen claim that the 1967 amendment is unconstitutional on several other grounds, it is unnecessary to discuss them since the ground just stated is fatal to, and dispositive of, the claims of the income beneficiaries. Although this would necessarily be inclusive of our holding

---

[3] It may be pointed out that the difficulties in the instant case flow from the attempt, in the 1967 amendment, to change the language and provisions of the Uniform Principal and Income Act in an endeavor to remove from the operation of that act a limited class of trusts. Moreover, major modifications of the type attempted here destroy the uniformity of application of the Uniform Act throughout the states.

of partial unconstitutionality in the discussion of the first question, that holding was independently and primarily based on an entirely different and additional ground of unconstitutionality.

The questions upon which our advice is desired are:

"A. With respect to capital gains dividends received by the plaintiffs from Broad Street between June 15, 1965 (the effective date of Public Act 263) and October 1, 1967 (the effective date of Public Act 535), should the plaintiffs distribute said dividends as income?

"B. With respect to capital gains dividends received by the plaintiffs from Broad Street after October 1, 1967, should the plaintiffs distribute said dividends as income?"

To both questions in the reservation we answer, "No."

No costs will be taxed in this court in favor of any party.

In this opinion the other judges concurred.