CARRIE H. GOODWIN v. J. B. McGAUGHEY and Others.[1]

June 25, 1909.

Nos. 16,102—(95).

**Will—Interest Construed to Mean Net Income.**

Under the terms of a will the trustees were directed to convert any real estate which might belong to the testator at the time of her death into personal property, and to invest the proceeds of such sale in such a way as to produce an annual income, and to pay all the interest arising out of the personal property, including the proceeds of the sale of such real estate, annually to a person named, so long as she should live. *Held*, that the word "interest" is here used as the equivalent of income, and that the owner of the life estate is entitled to the net income only after the payment of taxes and other necessary and proper expenses incidental to the care, preservation, and handling of the property.

**Life Tenant Entitled to Stock Dividends from Earnings.**

As between a life tenant, who is entitled to the income from certain stock in a corporation, and a remainderman, who will receive the corpus of the estate after the death of the life tenant, stock dividends declared out of a surplus produced by the accumulation of earnings after the death of the testator belong to the life tenant as a part of the earnings of the original stock.

Action in the district court for Winona county against J. B. McGaughey as surviving trustee under the will of Mary E. Wakefield, deceased, and certain beneficiaries under that will to construe the will and determine how much of the interest, rent, and income of said estate should be paid to the plaintiff annually under the provisions of the will, and to direct the trustee to transfer and deliver her ten shares of stock in the Merchants Bank of Winona issued in payment of the stock dividend referred to in the opinion. The case was tried before Snow, J., who made findings and dismissed the action as to defendant McGaughey, found that the plaintiff was entitled only to the net income from the estate and that the ten

[1]Reported in 122 N. W. 6.

shares of stock belonged to the corpus of the estate. From that portion of the judgment entered pursuant to the findings which determined that plaintiff was entitled to the net income of the estate only, and from that portion of the judgment which determined that the twenty shares of stock in the Merchants Bank of Winona, which were issued by a vote of its board of directors on July 17, 1905, were held by said trustee as part of the corpus of the trust estate, plaintiff appealed. Modified.

*Webber & Lees,* for appellant.

*William Codman,* for respondents.

ELLIOTT, J.

On May 26, 1894, Mary E. Wakefield, residing at Winona, made a will which contained the following provisions:

"10. All the estate thereafter remaining, I direct to be turned over to my trustees hereinafter named, to be by them invested in such a way as to bear interest, and if any real estate shall be found belonging to my estate, I authorize and empower the said trustees to sell and convey the same and invest the proceeds of such sales in such a way as to produce an annual income, and to pay all the interest arising out of my personal property left, and out of the proceeds of my real estate annually to my sister, Carrie H. Goodwin, as long as she shall live.

"11. Out of the amount of the principal of the funds in hands of my trustees at the death of my sister Carrie, they are directed to pay to the St. Paul's Episcopal Church of Winona, Minn., the sum of five thousand dollars ($5,000), to be forever safely invested by the said religious corporation so as to produce interest to be forever used and applied to and for church music (in memory of my dear daughter) and they, the trustees, shall further pay to the Congregational Church of South Berwick, Maine, the sum of five thousand dollars ($5,000), to be safely invested by said religious corporation forever so as to bear interest, such interest to be used for the improvement of its church music.

"12. All the rest, residue and remainder of my estate, if any such

shall thereafter be found, I direct to be divided and distributed in equal shares among the then living children of Sarah E. Merrill and of the late Mary L. Moody of Maine."

Mrs. Wakefield died August 10, 1898. Her estate was inventoried November 17, 1898, as follows:

| | |
|---|---:|
| Real estate | $21,052.90 |
| Household furniture | 380.75 |
| Merchants Bank stock | 800.00 |
| Other stocks | 162.00 |
| Notes and mortgages | 25,756.43 |
| Other personal property | 5,888.77 |
| Total | $54,040.85 |

On July 25, 1904, the probate court of Winona county entered its final decree, assigning the residue of the estate, after debts, legacies, and expenses of administration had been paid, to O. B. Gould and J. B. McGaughey, "to have and to hold in trust for the uses and purposes set forth in the last will and testament of said deceased." Pursuant to this decree the executors turned over to the trustees personal property, amounting to $22,452.34, and the real estate of the deceased which had not been sold. Part of the real estate of the deceased had been sold, and $8,757.55 had been received therefor. The remaining real estate passed into the hands of the trustees.

The trustees managed this estate together until January 16, 1907, when Judge Gould died. Thereafter Dr. McGaughey, as surviving trustee, continued to manage the estate until July 3, 1907, when he rendered an account to the district court covering the entire period of the trusteeship, from its beginning up to June 30, 1907. This account was allowed by the district court on July 22, 1907, and at the same time the resignation of Dr. McGaughey as trustee was accepted and Burr D. Blair was appointed his successor. It appears

from the account so filed and allowed that on the last day of June, 1907, the trustees had on hand the following property:

| | |
|---|---:|
| Moneys invested and bearing interest .............. | $22,593.28 |
| Moneys [mortgages] representing proceeds of real estate sold .................................... | 3,543.33 |
| Cash ........................................ | 1,058.40 |
| Real estate .................................. | 5,277.78 |
| Total ................................. | $32,472.79 |

During the whole time Messrs. Gould and McGaughey acted as trustees they administered the trust as follows: They kept the funds of the trust estate invested in interest or dividend bearing securities, adding to such investments from time to time. The rent received from the unsold real estate was used to pay taxes and expenses attendant upon the administration of the estate. The remaining moneys required to pay such expenses, including taxes, trustees' fees, and other charges were paid out of the interest and dividends received from the invested personal estate.

Included in the trust estate which originally came into the possession of the trustees were ten shares of stock in the Merchants Bank of Winona, of the face value of $100 per share. On July 1, 1905, the bank had accumulated a surplus out of the profits of its business during the preceding years amounting to more than $50,000 and it also had earned in addition thereto $10,000, which it carried as undivided profits. This surplus had been set aside from the earnings of the bank over and above the amounts paid in cash as dividends with the exception of $2,500, proceeds of a judgment collected by the bank, that had been considered bad. On June 8, 1905, a meeting of the directors of the bank was called to consider the advisability of paying a stock dividend of one hundred per cent. in July in lieu of the regular dividend. On July 17, 1905, the following resolution was adopted:

"Whereas, our stockholders by unanimous vote of all the shares represented at a meeting held June 28th, 1905, amended the articles

of this bank and provided for the increase of our capital stock to $100,000:

"Be it resolved, that in accordance with said resolution that our capital stock be increased to $100,000 by the payment to all stockholders of record on that date out of our surplus of a full dividend of 100 per cent., subject to the approval of the superintendent of banks and in accordance with our state banking law."

Pursuant to this resolution the certificate for the ten shares of stock which the trustees held was surrendered to the bank, and a new certificate for twenty shares, of the face value of $100 each, was issued in its place and delivered to the trustees.

The present action was brought to obtain a construction of the will. Two questions were presented:

1. Was Miss Goodwin entitled to all the interest received by the trustees on investments of funds made by them or only to so much of such interest as remained after paying therefrom taxes and expenses incident to the management of the estate?

2. Was she entitled to receive from the trustees the ten shares of bank stock which were issued in July, 1905, as a stock dividend upon the ten shares of stock originally held by the trustees?

The district court held that she was entitled to receive the net income only, and not the stock dividend. From so much of the judgment the plaintiff appealed to this court.

1. Under the terms of this will the trustees were directed to convert any real estate which might belong to the testator at the time of her death into personal property, and to invest the proceeds of such sale in such a way as to produce an annual income, and to pay all the interest arising out of the personal property, including the proceeds of the sale of such real estate, annually to the appellant so long as she shall live. This contemplates that the entire estate shall be converted into personal property, and that it shall be so invested as to produce a regular income, which shall be paid to Miss Goodwin in annual instalments during her lifetime. The property is subject to taxation, and expenses must necessarily be incurred for its care and preservation. The words "all the interest," here used, do not refer to the per cent. earned by the money placed at interest.

It is the equivalent of all the income arising from the property, and while income is often held to refer to what comes in or is received from a business or property, without regard to the outgoing expenditure, in this connection it means the net, as distinguished from the gross income. Andrews v. Boyd, 5 Me. 199; Earl v. Rowe, 35 Me. 414, 58 Am. Dec. 714; Bates v. Porter, 74 Cal. 224, 15 Pac. 732; Ex parte McComb, 4 Bradf. Sur. (N. Y.) 151; Thompson's Appeal, 100 Pa. St. 478. A direction to trustees to pay to a beneficiary the income of the estate, or from certain property, means what is left after paying taxes and other necessary and proper expenses incident to the care, preservation, and handling of the estate or property. Unless the testator so states, a construction which would require a regular annual diminution of the corpus of the estate, and thus through the mere lapse of time ultimately destroy the source of income, is not admissible. We are unable to find any such intention in the language used in this will. This issue was properly decided by the trial court.

2. Mrs Wakefield died August 10, 1898, and as a part of her estate left ten shares of capital stock of the Merchants Bank of Winona, of the par or face value of $100 per share. Prior to the death of Mrs. Wakefield this stock had paid no dividends; but the business of the bank became so prosperous that by July 1, 1905, there had been accumulated, in addition to the dividends, which were paid in cash, a surplus of something over $50,000, in addition to the sum of $10,000 which was being carried as undivided profits. Twenty-five hundred dollars, which formed a part of this surplus, came from the payment of a judgment which had been considered worthless. The balance had been set aside from the earnings of the bank over and above the amounts paid in cash as dividends. In July, 1905, in pursuance of the resolution recited above, the bank issued a stock dividend of one hundred per cent., and the trustees surrenderd the old certificate for ten shares and received a new certificate for twenty shares, of the face value of $100 each.

The surplus thus distributed was earned after the death of Mrs. Wakefield. The new stock represents money earned by the corporation in the ordinary course of business, and which might have been

distributed as cash dividends. It does not represent increased capitalization, based upon an increase in the value of the property of the corporation, and no question of the capitalization of good will is involved. We have, then, the question whether a dividend paid in stock, instead of cash, out of a surplus which resulted from the earnings of the business, after the death of the testator and the creation of the trust, should go to the life tenant as part of the earnings of the stock, or to the remainderman as part of the corpus of the estate.

The question of the right to stock dividends, as between life tenant and remainderman, has given rise to much discussion and considerable conflicting authority. It has been so elaborately considered in recent cases that to review the authorities and state the various reasons upon which the conclusions rest would be mere repetition of matter which is already easily accessible. A very full collection and classification of the authorities will be found in a note in 12 L. R. A. (N. S.) 768, and an article in 25 Law Rev. 25. The cases are also classified in the recent case of Kalbach v. Clark, 133 Iowa, 215, 110 N. W. 599, 12 L. R. A. (N. S.) 801. It appears that there are three well defined rules, each supported by an ample array of authorities:

(a) In the early English cases it was held that ordinary cash and stock dividends go to the life tenant, while extraordinary dividends belong to the corpus and go to the remainderman. Brander v. Brander, 4 Ves. Jr. 800; Irving v. Houstoun, 4 Paton, Sc. App. 521. This rule has been departed from by the English courts, which now seem to apply a rule very similar to that announced in Minot v. Paine, 99 Mass. 101, 96 Am. Dec. 705. See Bouch v. Sproule, L. R. 12 App. Cas. 385, 397; In re Hopkins' Trusts, L. R. 18 Eq. 696.

(b) The rule which prevails in Massachusetts and other states and which has been adopted by the supreme court of the United States, is to the effect that stock dividends, no matter when earned or however declared, should be treated as capital and given to the remainderman. Minot v. Paine, supra; Gibbons v. Mahon, 136 U. S. 549, 10 Sup. Ct. 1057, 34 L. Ed. 525; Green v. Bissell, 79 Conn. 547, 64 Atl. 1056, 8 L. R. A. (N. S.) 1011, 118 Am. St. 156.

(c) Under what is commonly called the Pennsylvania rule the court determines when the stock dividends were earned, and gives to

the holder of the life estate such as were earned after the life estate arose, and to the remainderman such as were earned before the creation of the life estate. Earp's Appeal, 28 Pa. St. 368; Biddle's Appeal, 99 Pa. St. 278; Hite's Devisees v. Hite's Exr., 93 Ky. 257, 20 S. W. 778, 19 L. R. A. 173, 40 Am. St. 189; Gilkey v. Paine, 80 Me. 319, 14 Atl. 205.

Numerous cases supporting these various theories will be found collected in the note in 12 L. R. A. (N. S.) 768. See also 2 Perry, Trusts (3d Ed.) § 544. Mr. Cook, in the last edition of his learned book on Corporations, says of the Pennsylvania rule: "This rule, inasmuch as it obtains in nearly every state in the Union, may well be called the American rule. It proceeds upon the theory that the court, in disposing of stock or property dividends, as between life tenant and remainderman, may properly inquire as to the time when the fund out of which the extraordinary dividend is to be paid was earned or accumulated, and also as to the method of accumulation. If it is found to have accrued or been earned before the life estate arose, it may be held to be principal, and, without reference to the time when it is declared or made payable, to belong to the corpus of the estate, and not to go to the life tenant. But when it is found that the fund, out of which the dividend is paid, accrued or was earned, not before but after the life estate arose, then it may be held that the dividend is income, and belongs to the tenant for life." 2 Cook, Corp. (6th Ed.) § 554, and review of the cases in the notes.

It seems to us that the Pennsylvania rule is the most reasonable, and that its application will be more likely to effectuate the intention of the testator. It may be that it is not always easy to determine when the fund was earned; but that fact alone is not sufficient reason for refusing to apply the rule. In the present case the surplus was all earned after the death of Mrs. Wakefield. The dividend stock in question should therefore be held to belong to Miss Goodwin, because it represents nothing but the earnings of the stock which belonged to Mrs. Wakefield at the time of her death. The judgment of the trial court is therefore modified, and the case is remanded, with directions to make the conclusions of law conform to the views expressed herein.

Judgment modified.