## Lovett Estate (No. 2)

*Charles H. Miner, Jr.*, for accountant.

*James P. Harris*, for estate of life tenant.

BRADY, P. J. (specially presiding), August 15, 1951. —This is an audit of the first and final account of Benjamin F. Morgan, trustee, deceased, as stated by Jessie L. Morgan, executrix of the estate of Benjamin F. Morgan, deceased.

The audit was heard, after due legal notice, on June 18, 1951.

The audit was closed and from the record we find the following facts:

1. That decedent died testate on February 24, 1933; her will was duly probated on March 9, 1933, and in the will a trust was created for Kaloolah L. Buchanan, for the term of her natural life, and Benjamin F. Morgan was named trustee. Benjamin F. Morgan is now deceased and the Real Estate Trust Company of Philadelphia, Pa., was appointed substituted trustee on September 22, 1950.

2. The fund for distribution, as shown by the account confirmed absolutely on March 26, 1951, amounts to:

| | |
|---|---:|
| Principal | $6,534.95 |
| Income | 81.52 |
| Surcharge in income account as directed in the order of this court, dated March 26, 1951.... | 716.99 |
| Total | $7,333.46 |

3. An exception was filed by the substituted trustee to the account of the testamentary trustee, deceased, as stated by the executrix of the estate of the late fiduciary. The exception was directed against the claim of credits in the account for distribution to the life beneficiary certain "capital gains dividends" received as part of cash dividends on capital stock of an investment company, to wit, Wellington Fund, Inc.

The amount of such cash dividends designated "capital gains dividend" paid by the investment company and distributed by the trustee was admitted to be $716.99.

The exception was sustained pro forma and credit in the account reflecting the distribution of "capital gains dividends" amounting to $716.99 was stricken and the account confirmed finally but without prejudice to the rights of all interested parties to present claim for this amount at the audit for distribution and award. The life tenant has made such claim.

It appeared that the late fiduciary in his administration of the trust had over the period of years gradually invested the greater portion of the trust fund in stock of the investment company.

The investment company, Wellington Fund, Inc., a Delaware corporation, is subject to the provisions of the Investment Company Act of August 22, 1940, 15 U. S. C. §80 a-1, et seq., 54 Stat. at L. 789, and elected classification for tax purposes under sections 361 and 362 of the Internal Revenue Code, 26 U. S. C. §170.

The account shows an increase of the corpus of the trust during the administration. The corpus having increased from a cash fund of $3,469.87 to the reported value of $6,534.95 (in kind), including therein 320 shares of Wellington Fund, Inc., at valued (cost) of $5,737.21.

Proper distribution and award of the balance shown for distribution reflected in the account as confirmed presents the question: Should "capital gains dividends" paid on investment company shares of stock to a holder-fiduciary be distributed by him to the life beneficiary as income or be allocated to corpus for the benefit of the remainderman?

Neither the trust beneficiaries nor the substituted trustee questioned the action or conduct of the late fiduciary investing corpus or principal of the trust fund in stock of an investment company.

The action of the trustee that is questioned is his distribution of "capital gains dividends" received on the stock of the investment company, an asset of the trust corpus.

The investment company is subject to the provisions of the Investment Company Act of 1940, 15 U. S. C. §80 a-1, et seq., and sections 361 and 362 of the Internal Revenue Code, 26 U. S. C. §170. The investment company under such regulations is required to

distribute annually not less than 90 per cent of its income earnings from interest and dividends as well as all of its profits from net long term capital gains. In making such distribution, it is required to advise its stockholders of the proportion of the total dividends derived from long term gains and the proportion attributable to income received on investments.

Such designated or "label" dividends allocated for tax purposes benefit the corporation and stockholder; but the "label" should not govern the allocation by a trustee-holder of such dividends either to income or principal.

The portfolio assets of an investment company are not regarded as permanent assets of fixed capital by the managers of the company; the securities held are treated by the managers as funds to be turned over in the normal management of the business. Selling a portfolio asset is but a normal incident in the business. The managers of an investment company must: (1) select, (2) buy, (3) hold, and (4) *sell* various issues of securities and stock, depending on market trend, price, indicated earnings, dividend potentials and other factors, in short, they "buy the market". The gain resulting from turning over of any portfolio asset by an investment company is income occurring in the ordinary conduct and course of such business.

In the opinion of the court, the trustee had made proper distribution of "capital gains dividends" as income to the life beneficiary. The decision in Byrne's Estate, 81 N. Y. S. (2d) 23, concisely decides the question:

"The buying and selling of securities is the operating procedure of investment companies and the profits derived from such activities when distributed to stockholders in the form of dividends are income and not principal . . .".

Since the trust was created prior to the passage of the Uniform Principal and Income Act of May 3, 1945, P. L. 416, as reënacted by the Principal and Income Act of July 3, 1947, P. L. 1283, the Pennsylvania rule of apportionment would apply to the distribution of such dividends, if the intact value of the corpus assets of the trust were impaired: Crawford Estate, 362 Pa. 458, But it is the opinion of the court that dividends paid by an investment company, although such dividends are designated or labeled "Capital gains dividends", are true *income* dividends on the investment company stock and the contention that such dividends are principal or a depletion of the intact value of the stock overlook the purpose, objective and advantages of the business entity, a regulated investment company.

Therefore, the distribution by the trustee to the life beneficiary of "capital gains dividends" received as cash dividends on stock in the regulated investment company, Wellington Fund, Inc., was a proper allocation by the trustee.

Distribution and award of the balance shown in the account as confirmed should be made in accordance with such finding.

We find as a matter of law: That after paying the costs of the audit and giving effect to the adjudications of this audit, the corpus of this fund, to wit: Bond, $1,000, New Orleans Terminal Co., valued $797.74, and 320 shares of Wellington Fund, Inc., valued at $5,737.21, will be distributed in kind to the Real Estate Trust Company of Philadelphia, Pa., substituted trustee, for further accounting, and the balance of income to the life tenant, Kaloolah L. Buchanan.