## ROSENBURG ET AL. *v.* LOMBARDI, GUARDIAN AD LITEM ET AL.

[No. 163, September Term, 1959.]
(Two Appeals In One Record)

*Decided May 12, 1960.*

The cause was argued before BRUNE, C. J., and HENDER-
SON, HAMMOND, PRESCOTT and HORNEY, JJ.

*Allan H. Fisher, Jr.,* and *Arthur W. Machen, Jr.,* with
whom were *Samuel J. Fisher* and *Venable, Baetjer & How-
ard* on the brief, for appellants.

*George Gump,* with whom were *Joseph Bernstein, Shale
D. Stiller, and Frank, Bernstein, Gutberlet & Conaway* on the
brief, for appellees.

PRESCOTT, J., delivered the opinion of the Court.

The sole question involved in this appeal is whether a
capital gains dividend of the Lehman Corporation (Lehman),
an investment company, paid, on January 28, 1958, to a trust
created prior to June 1, 1939 (and, therefore, not governed
by the provisions of the Code (1957), Article 75 B) should
be treated as principal or income of the said estate.

The testator, Lewis S. Rosenburg, late of Baltimore City,
died in 1934, leaving a last will and testament dated August
17, 1932, and two codicils thereto. The will created a resid-
uary trust under which the Safe Deposit & Trust Company
of Baltimore (now, by merger, Mercantile-Safe Deposit &
Trust Company) and the testator's widow, Sadie Elias
Rosenburg (now, by remarriage, Sadie Elias Grinberg) were
named as trustees. Most of the assets of the trust came into
the hands of the trustees in 1936 after settlement of the de-
cedent's personal estate; and, as of March 6, 1958, the value
of the trust estate was $1,143,107.75.

Lehman's principal, if not its only business, is to select, buy,
hold and sell various issues of securities and stock, depending
upon market trends, price, indicated earnings, dividend po-

tentials and other factors. It, of course, collects interest and dividends other than capital gains dividends from its investments and distributes the same as part of its investment income, when, in accordance with its policy, it deems it proper and desirable. Its primary field of investment has been equity securities, and it is generally regarded by investment advisers as a conservative, well-managed stock fund. A major portion of its portfolio has consisted of marketable securities traded on The New York Stock Exchange or the American Stock Exchange, but a small percentage of its assets has been customarily invested "in carefully studied special situations." It is a closed-end investment company as distinguished from an open-end company. The parties agree that, for the purposes of this case, the distinction is immaterial. It is also a "regulated investment company" within the meaning of that term in Section 852 of the Internal Revenue Code. It has always been the policy of Lehman to distribute substantially all of its net capital gains. Prior to 1957, these capital gain distributions were made in cash, but in 1957 the corporation gave its stockholders the option of receiving them in cash or in stock. It has experienced a very successful and profitable period over the last twenty years; according to its annual reports, the net asset value of its fund at the end of the year 1937 was $7.32 a share, after making adjustments for the various splits which have subsequently been made. The net asset value at the end of 1957 was $20.76 per share, which shows a substantial appreciation in the principal account of the present trust.

Regulated investment companies are principally designed to afford a large number of individuals of moderate means an opportunity to pool their investment resources in order to secure diversification of risk and experienced management. The companies issue their shares publicly to investors and then invest the funds so received in a diversified portfolio of securities which are carefully selected and continuously supervised by professional managers. Cohen, *Tax Revision Compendium on Broadening the Tax Base,* submitted to the Committee on Ways and Means of the U. S. House of Representatives, pp. 1653-1654.

There can be little doubt that under the Maryland decisions, generally, the increase in the value of corporate stocks or securities realized by a trustee is regarded as capital gains and, therefore, treated as corpus. *Smith v. Hooper,* 95 Md. 16, 51 A. 844, 54 A. 95; *Girdwood v. Safe Deposit & Trust Co.,* 143 Md. 245, 122 A. 132; *Safe Deposit & Trust Co. v. Bowen, et al.,* 188 Md. 482, 53 A. 2d 413.

The chancellor held that in his opinion the basic principle involved in the above cases should "be applied by a trustee where there are successive beneficiaries * * * to the capital gain distribution by The Lehman Corporation" in the same manner as the principle should be applied "to the capital gain realized by a trustee upon the sale of a security." The appellees, in this Court, advance two main contentions in support of the chancellor's conclusion: (1) they argue that the nature, purpose and functions of investment companies demonstrate that they are mere conduits, and therefore the sale of their assets should be treated in the same manner as sales made by their stockholders; and (2) that distributions of capital gains from investment companies are similar to and should be treated the same as capital gains derived from common trust funds.

The case turns, we think, upon a proper analysis of previous decisions of this Court. The principle of law announced and applied in the *Hooper, Girdwood* and *Bowen* cases, *supra,* is, of course, still the law of this State; but, it is subject to an important exception, namely, that moneys arising from the sale of corporate property, in which the capital of the corporation has been invested, and distributed as a cash or stock dividend are income if they arise from a sale of property made by the corporation in the ordinary course of its business, when it sells only such property as it is its regular business to sell.

The case of *Krug v. Mercantile T. & D. Co.,* 133 Md. 110, 104 A. 414, is directly in point and is controlling here.[1] In

1. The only differences between Krug and the case at bar are that in Krug the distributing corporation was a Banking and Trust corporation and not an investment corporation; and in Krug the distribution was made of the actual shares of stock of another corporation, while here the dividend was paid in cash.

1914, the Mercantile T. & D. Company (Mercantile) made a very advantageous purchase of certain debentures and stock of the Merchants & Miners Transportation Company ('Transportation Company). Without going into the details of the subsequent events that transpired concerning this purchase (they are set forth in 133 Md. at p. 113), the net result was that by the end of 1917 Mercantile had sold the first mortgage bonds acquired by it in exchange for the debentures and realized from such sale an amount which exceeded the purchase price originally paid for the debentures and stock, and was also the owner of some 13,614 shares of stock of the Transportation Company carried on its books at a nominal value.

In January, 1918, the directors of Mercantile allocated 10,000 shares of the stock it held in the Transportation Company to be distributed to its (Mercantile's) stockholders on a basis of one share of the Transportation Company's stock for each three shares of Mercantile's capital stock.

Mercantile held, as trustee under the will of Gustav Krug, some of its own capital stock, and consequently received certain of the Transportation Company's stock in the distribution as such trustee; and the single question posed in the case was whether the shares of stock so received should be treated, as between the beneficiary for life and remaindermen under Mr. Krug's will, as corpus or income.

The Court pointed out that admittedly the business transacted by Mercantile included the purchase of stocks, bonds and other securities and the selling thereof; it then recognized and applied the exception to the general rule, named above, and stated, "[i]n the case at bar, 'the assets' distributed among the stockholders represent the profit which has been realized by the Trust Company (Mercantile) in the usual course of its business and was in substance a distribution in kind of a portion of the identical specific profits accruing to the Trust Company * * *." The Court then held that "under the well settled rules applicable to this class of cases" the dividend in controversy was income and not corpus.

The exception was also acknowledged and stated in *Ex Parte Humbird,* 114 Md. 627, 638, 80 A. 209; and it was

again stated and applied in *Washington Co. Hosp. Ass'n v. Hagerstown Tr. Co.*, 124 Md. 1, 91 A. 787. In both of these cases, it was said that the exception was confined to cases "in which the earnings of the corporation necessarily involve the conversion of its capital."

We turn now to the out-of-state decisions upon the subject. There are not a great many directly in point; but all that we have found conform to the result reached in *Krug, supra*. In *Lovett Estate*, (No. 2), 78 D. and C. Reports 21 (Orphans' Court of Luzerne County, Pa. (1951)), the court held that a capital gains dividend of the Wellington Fund, an open end investment trust, should be treated as income. The opinion reads, in part, as follows:

> "The portfolio assets of an investment company are not regarded as permanent assets of fixed capital by the managers of the company; the securities held are treated by the managers as funds to be turned over in the normal management of the business. *Selling a portfolio asset is but a normal incident in the business."* (Italics added.)

The *Lovett* case quoted with approval and followed the case of *In re Byrne's Estate*, 81 N.Y.S. 2d 23. There the court held that long-term capital gains dividends on stock of The Lehman Corporation and of the General Investors, Inc., were wholly income, stating:

> "The Court holds that these dividends are payable wholly to income. The buying and selling of securities is the operating procedure of investment companies and the profits derived from such activities when distributed to stockholders in the form of dividends are income and not principal. The dividend is not unlike that received from a corporation engaged in the buying and selling of real property. When such corporations distribute the profits on the sale of property they are distributing 'income and not dividing capital.' "

See also *In re Bruce's Trust*,[2] 81 N.Y.S. 2d 25. Cf. *In re*

2. The New York cases on the subject provoked considerable in-

*Appleby's Estate,* 175 N.Y.S. 2d 176; *In re Hurd's Will,* 120 N.Y.S. 2d 103; *Coates v. Coates,* 304 S. W. 2d 874 (Mo. 1957).

In Cohan and Dean, *Apportionment of Stock Proceeds,* 106 U. Pa. L. Rev. 157, 183 (1957), the authors conclude with the following statement:

> " * * * For apportionment purposes, it would seem unreal to view a share in a mutual fund as a *pro rata* ownership of the securities; rather, it would seem that mutual fund shares should be treated like any other investment, and that realized increments within the fund are income, for the mutual fund is, after all, in the business of investing money and spreading risk capital in such a way as best to afford a broad basis of investment."

It is earnestly argued that capital gains from investment companies are similar to and should be treated as capital gains derived from "common trust funds" [authorized by Code (1957), Article 11, Section 62]. We think a sufficient answer to this contention, though a short one, is that common trust funds are by statute, unless they otherwise provide, subjected to the provisions of Code (1957), Article 75B, and therefore are in the same status as trusts created after June 1, 1939.

From what we have said above, it is seen that Lehman's

terest and several articles were published concerning the question under consideration in the publication "Trusts and Estates." Shattuck, Capital Gain Distributions, Principal or Income? 88 Trusts and Estates, 160 (1949); Young, A Dissent On Capital Gain Distribution. 88 Trusts and Estates, 280 (1949); Shattuck, Further Comment on Capital Gain Distributions. 88 Trusts and Estates, 429 (1949); Young, More About Capital Gains, 88 Trusts and Estates, 467 (1949); Putney, Capital Gain Dividends—Should They Be Allocated To Income or Principal. 95 Trusts and Estates, 22 (1956). Professor Scott in his work on trusts, Scott on Trusts, Section 236.14 (2nd Ed.) says: "In a few cases decided by the lower courts in New York, it has been held that capital gains received from incorporated investment companies are allocable to income. Whether these cases will be followed is a doubtful question. They have met with strong criticism."

repeated sales and purchases of the securities in its portfolio in the ordinary course of its business brings it squarely within the ambit of the exception named and applied in *Krug v. Mercantile T. & D. Company, supra,* in regard to the allocation of its capital gains dividends to income or corpus; while the question as to whether or not the capital gains received by a common trust fund constitute income or principal is controlled by the written plan under which the fund is administered or by Article 75 B of the Code.

The appellees raise one subsidiary question which is not without force. Since 1929, when it was formed, Lehman has distributed some $18,000,000 more of capital gains than the net realized profit on investments for the period, and has charged the same to its surplus account. The appellees argue that this is unfair to the remaindermen. Lehman only distributes its *net* securities profits for a particular year as capital gains dividends; but, when it realizes a net profit on its sale of investments in any year, it must distribute at least 90 per cent thereof in order to comply with the Internal Revenue Code. In the years where net capital losses were sustained, they were charged directly to surplus. However, the Company has, over the period, retained and added to surplus more than $5,000,000 of ordinary income, and, as of December 31, 1957, had a net unrealized appreciation in its investments of some $94,000,000. While the subject under consideration may affect the usefulness or desirability, *vel non,* of an investment company's stock for trust purposes, or the desirability of the rule in the *Krug* case, we feel bound by the decision in that case.

For the reasons stated above, we hold that the capital gains dividend paid by Lehman to the trustees on January 28, 1958, is income and should be distributed to the life tenants as such.

> *Decree reversed, and case remanded for the entry of a decree in accordance with this opinion, the costs to be paid out of the corpus of the trust estate.*