266 Minn. 127 (1963)
123 N.W.(2d) 69
IN RE TRUST UNDER LAST WILL OF CLARIBEL H. GARDNER.
GEORGE H. GARDNER
v.
McNEIL V. SEYMOUR AND OTHERS.
No. 38,878.
Supreme Court of Minnesota.
July 19, 1963.
*128 David W. Raudenbush, Cole Oehler, and Briggs & Morgan, for appellant.
Francis D. Butler and Doherty, Rumble & Butler, for respondent remainderman.
M.V. Seymour and McNeil V. Seymour, Jr., for respondent trustees.
Sheridan J. Buckley, Jr., for Frances L. Clarke, amicus curiae.
David R. Brink and Dorsey, Owen, Marquart, Windhorst & West, for First National Bank of Minneapolis, amicus curiae.
KNUTSON, CHIEF JUSTICE.
This is an appeal by the life tenant of a testamentary trust from a part of an order entered by the district court in a statutory trust accounting procedure.
The case involves two distinct questions that will be considered separately. The first concerns the allocation of stock dividends received by the trustees on stock held by them. The second concerns the proper allocation of capital gains distributed by regulated investment funds and presents a question as to whether distributions received from such a fund organized as a Massachusetts trust stand on the same footing as those received from funds organized as corporate entities.

STOCK DIVIDENDS
The facts have been stipulated. On August 6, 1938, Claribel H. Gardner died a resident of St. Paul, leaving a last will and testament and a codicil under which the testamentary trust involved in this case became operative as of August 1, 1939. Neither the will nor codicil contains any provisions directing the manner in which stock dividend shares or capital gains from investment trusts should be allocated between principal and interest beneficiaries.
The trust was created for the benefit of testatrix' son George for life and his widow and issue, if any, in remainder. George was married, his wife died in 1959, and he has not remarried. His only child, a son born in 1946, is still living and is thus the only remainderman. The son is represented in this proceeding by a guardian ad litem.
Individual trustees served from August 1, 1939, until February 14, *129 1960. Upon the death of the last of the named trustees, a corporate trustee, First Trust Company of St. Paul, was appointed pursuant to the provisions of the codicil. Its appointment was confirmed on February 23, 1960. It and McNeil V. Seymour are now the acting trustees.
The individual trustees maintained proper records of receipts and disbursements; but they did not come under the jurisdiction of the district court nor were their accounts settled and allowed pursuant to statute. Upon the qualification of the corporate trustee, accounts were filed covering the period from the inception of the trust through the date of the death of the last individual named trustee and from the appointment of the corporate trustee through October 13, 1960. These accounts show that from August 1, 1939, to February 14, 1960, stock dividends were received by the trustees, who did not distribute them, as follows:
4 shares, First Bank Stock Corporation, received October 10, 1953, as a 2% stock dividend.
21 shares, Sunray Oil Corporation, declared as follows  10 shares as a 5% stock dividend in 1947; 11 shares as a 5% stock dividend in 1956.
325 shares, St. Paul Fire and Marine Insurance Company, declared as follows  250 shares on April 17, 1951, as a 100% stock dividend; 75 shares on September 11, 1957, as a 15% stock dividend.
The accounts presented to the district court sought instructions as to the allocation of these stock dividends. The court held that all stock dividends, with the exception of the 10 shares of Sunray Oil Corporation declared in 1947, should be allocated to principal and the 10 shares mentioned to income. The life tenant appealed from the part of the ruling of the court assigning dividends to principal. The remainderman has not appealed but has acquiesced in that part of the order assigning the 10-share stock dividend to income.
This portion of the case involves essentially a determination of whether Minn. St. 501.47, enacted March 16, 1951, taken substantially from the Uniform Principal and Income Act, may constitutionally be applied to stock dividends received after the effective date of the act by trusts created prior to that date.
Historically, two rules have prevailed throughout this country as to the *130 allocation of stock dividends. Under one rule, commonly called the Massachusetts rule, all stock dividends are allocated to principal. Under the so-called Pennsylvania rule, the source of the dividend rather than its form determines whether and to what extent it is to be allocated to income or principal. Under this rule generally stock dividends are income if they are declared out of the earnings accruing to the corporation during the period of the trust, which can be paid without impairing the "intact value" of the principal, but are principal if they are declared out of earnings accruing prior to the creation of the trust.[1]
In Goodwin v. McGaughey, 108 Minn. 248, 122 N.W. 6, we adopted the Pennsylvania rule. As far as case law is concerned, we have adhered to that decision in Schmitt v. Eagle Roller Mill Co. 199 Minn. 382, 272 N.W. 277; In re Trust under Will of Clarke, 204 Minn. 574, 284 N.W. 876; In re Trusts under Will of Whitacre, 208 Minn. 286, 293 N.W. 784; and In re Trust under Will of Koffend, 218 Minn. 206, 15 N.W. (2d) 590.
In 1951 we adopted substantially § 5 of the Uniform Principal and Income Act, coded as Minn. St. 501.47. That adopts the Massachusetts rule and, as far as material here, reads:
"Subdivision 1. (1) Subject to clause (2), the provisions of this section govern the ascertainment of income and principal and apply to the construction of
"(a) all agreements containing trust provisions entered into subsequent to the effective date of this act;
"(b) all wills made by testators who die subsequent to March 17, 1951; and
"(c) all other wills and trust agreements and trust relations insofar as such terms do not impair the obligation of contract or deprive persons of property without due process of law.
"(2) A specific provision, contained in any trust instrument or agreement or in any will, which governs the allocation of principal and income, controls such allocation notwithstanding this section.
"Subd. 2. All dividends on shares of a corporation forming a part of *131 the principal, which are payable only in the shares of the corporation, shall be deemed principal. All rights to subscribe to shares or other obligations of a corporation accruing on account of the ownership of shares in such corporation and the proceeds of any sale thereof shall be deemed principal."
At the time this act was adopted by our legislature, only two cases had passed on the constitutionality of the retroactive effect of such act, namely, Crawford Estate, 362 Pa. 458, 67 A. (2d) 124 (1949), which declared that the income beneficiary had a vested right in stock dividends similar to those involved here and that the statute could not constitutionally be given retroactive effect, and Franklin v. Margay Oil Corp. 194 Okla. 519, 153 P. (2d) 486, which held much the same with respect to allocation of oil and gas royalties.
In 1958, the Supreme Court of Wisconsin held to the contrary in Will of Allis, 6 Wis. (2d) 1, 94 N.W. (2d) 226, 69 A.L.R. (2d) 1128, and thereafter the Pennsylvania court, in Catherwood Trust, 405 Pa. 61, 173 A. (2d) 86 (1961), overruled Crawford Estate, supra, and followed the Wisconsin court in Will of Allis. Following these decisions, we had under consideration a similar question in In re Trust Created by Warner, 263 Minn. 449, 117 N.W. (2d) 224, but found it unnecessary to pass on the constitutional issue. We did discuss these cases and thereafter, at least by dicta, said (263 Minn. 468, 117 N.W. [2d] 236): "We think that as far as the constitutional question is concerned these two decisions [Will of Allis, supra, and Catherwood Trust, supra] should be followed." The question is now directly before us, and we adhere to that conclusion.
Originally, a majority of the states favored the Pennsylvania rule. The trend during later years has been decidedly in favor of abandoning the Pennsylvania rule and adopting the Massachusetts rule, either by statute or court decision.[2]
Without doubt, the abandonment of the Pennsylvania rule has been due to the impossibility of applying it  mainly because of the increased complexity of corporate accounting.[3]
*132 Originally, Restatement, Trusts, adopted the Pennsylvania rule. § 236. In the 1947 meeting of The American Law Institute, the Massachusetts rule was adopted in the place of the former rule[4] and is now the rule of the Restatement.[5]
It is abundantly clear that experience has demonstrated the unworkability of the Pennsylvania rule. Inasmuch as we have now adopted the Massachusetts rule by statute, we are concerned only with the constitutionality of applying the statute retroactively to trusts created prior to its enactment. The argument in support of holding such application unconstitutional rests mainly on the claim that the income beneficiary in a state following the Pennsylvania rule at the time the trust was created has a vested right in the income of the trust and that dividends, whether in the form of cash or stock, constitute income; therefore, that they belong to the income beneficiary. The argument is buttressed by the contention that the cardinal purpose of construing a will or an inter vivos trust is to ascertain the intention of the testator or settlor; that where no other intention appears from the language of the instrument itself, it must be presumed that the testator or settlor used words such as "income" in the light of existing law; and that, therefore, the testatrix in this case must be held to have intended stock dividends to go to the income beneficiary because at the time the instrument was created we followed the Pennsylvania rule.
While there is merit to this argument, it is doubtful whether testatrix had any clear intention in mind at the time the will was executed. It is equally plausible that if she had thought about it at all she would have desired to have the dividends go where the law required them to go at the time they were received by the trustee, and, certainly, if she had *133 been mindful of the many difficulties that now exist in determining the proper allocation of stock dividends under the Pennsylvania rule, she would have chosen the simple solution rather than the more complex. So, while we seek the intent of the testator in a matter of this kind, if it can be found, we must do so with a reasonable mixture of commonsense.
We come then to the decisive question: Does the income beneficiary have a vested right in stock dividends? Clearly, he has no vested right in the earnings of the corporation whose stock is held by the trustees until there is a declaration of a dividend, cash or stock. We agree with appellant that statements in some of the decisions that the income beneficiary does not lose anything when stock dividends are allocated to principal are not entirely accurate. Assuming that the stock dividend is declared as a result of capitalization of surplus, it must be apparent that the income beneficiary has lost the potential cash dividend that might have been declared out of such surplus. See, Schmitt v. Eagle Roller Mill Co. 199 Minn. 382, 272 N.W. 277. But even though that is true, we think that it is clear that the income beneficiary has no vested right in such surplus until a dividend actually is declared. Such earnings may be siphoned off in a multitude of ways. They may be capitalized; they may be transferred to reserves for depreciation[6] or for a multitude of other purposes; they may be paid out as salaries or bonuses; they may be lost by an increase in tax rates; or they may be held as a hedge against less prosperous times so that dividends can be paid even when the earnings are insufficient to do so. Thus it is that, until a dividend is declared and passed on to the trustees, the beneficiary has no vested right in the earnings of the corporation.
The question finally resolves itself into a determination of what is income within the meaning of the trust instrument. Logically, it would seem that income refers to that which is received by the trustee rather than to that which constitutes earnings of the corporation in which the trustee holds stock. In determining what is income in dealing with a stock dividend which may be declared out of accumulations or sources other than annual earnings, it would seem clear that the beneficiary has no vested right in a rule of law or formula used to determine what is such *134 income. Essentially, that is the question here. The complexities and variations in modern corporate accounting  for whatever reason they exist  preclude the application of a rule of thumb by which it can be said that all stock dividends are necessarily income to a trustee in a trust accounting. If for no other reason, it should be held that, until the corporate earnings reach the trustee as true income, the beneficiary has no right to such earnings. Nor does the beneficiary have a vested right in the rule or formula by which it is determined what earnings are true income. It may well be said that the popularity of the Massachusetts rule is due to its practicability and that the Pennsylvania rule has been discarded because of its impossibility of application, but whatever the reason, whether born of necessity or adopted wholly because it is more applicable in the administration of trust affairs, we think it is clear that a change in the rule by the legislature does not involve a deprivation of constitutional rights of the income beneficiary. We therefore hold that the application of Minn. St. 501.47 retroactively to a trust created prior to its enactment is not violative of the constitutional rights of income beneficiaries of such trust.
Appellant calls our attention to In re Trust Created by Moulton, 233 Minn. 286, 46 N.W. (2d) 667, 24 A.L.R. (2d) 1092, 35 Minn. L. Rev. 682, where, in dealing with a rule pertaining to the administration of trusts to which we had adhered for a number of years, we said (233 Minn. 303, 46 N.W. [2d] 676, 24 A.L.R. [2d] 1104):
"* * * If the rule is now to be changed, it should be done by legislative rather than by judicial action, and then only so that the change would operate prospectively so as to leave unimpaired rights created in reliance upon the law as it has existed for these many years."
What we said in the Moulton case was based on the rule of stare decisis and the desirability of adherence to former decisions in order that there might be stability in the law. The case did not involve constitutional questions. While there is still much to be said in favor of the rule of stare decisis, even in this field we are not required to adhere to decisions that have become unworkable due to social and economic changes. The time does come when laws must keep pace with the changes in our times. *135 In Park Const. Co. v. Independent School Dist. 209 Minn. 182, 187, 296 N.W. 475, 478, 135 A.L.R. 59, 63, we said:
"No rights of property involved, nor rule of practice, the American doctrine of stare decisis is guiding policy, not inflexible rule. * * * Neither does it bar coordination of legal philosophy with that of new and commanding facts. Such coordination is necessary in order to satisfy the imperative demand for realistic judicial treatment of issues in their own actual environment rather than a synthetic one made from the materials of discarded doctrine. Particularly, it can have no restraining effect when, as here, an earlier policy of decision law is opposed to a later rule declared by statute." (Italics supplied.)
Ordinarily, acts of the legislature are not given retroactive effect unless expressly declared so by the legislature or it appears that it was clearly and manifestly so intended by the legislature. Minn. St. 645.21. Here, the legislature, in its wisdom, has declared the act retroactive except in so far as it may not be so by constitutional proscription. It has left it to this court to determine the constitutional issue. As stated above, at the time the act was passed the only decisions to be found involving the constitutionality of a retroactive application of provisions of the Uniform Principal and Income Act were Crawford Estate, 362 Pa. 458, 67 A. (2d) 124, and Franklin v. Margay Oil Corp. 194 Okla. 519, 153 P. (2d) 486. In all probability the legislature, in the light of these decisions, cautiously refrained from enacting an unconstitutional act. If they had had the benefit of Will of Allis, 6 Wis. (2d) 1, 94 N.W. (2d) 226, and Catherwood Trust, 405 Pa. 61, 173 A. (2d) 86, which overruled Crawford Estate, supra, they might not have been so cautious. In any event, it is permissible for the legislature to make an act of this kind retroactive in effect, absent a constitutional barrier. Finding no constitutional objection, we are bound to give it the effect which the legislature intended.
We have had the help of excellent briefs by the parties involved and by amici curiae. Throughout these briefs much concern has been expressed as to the effect of now holding that § 501.47 may be constitutionally applied retroactively to trusts created prior to the enactment of the statute. Our attention has been called to the fact that in this state *136 there are many trusts that have not come under the jurisdiction of the district court. Others have been administered under directions given by the district courts, some of which undoubtedly have adhered to the Pennsylvania rule. In reliance on Goodwin v. McGaughey, 108 Minn. 248, 122 N.W. 6, adopting the Pennsylvania rule, stock dividends not now recoverable may have been distributed to income beneficiaries either on the advice of counsel, on the direction of district courts, or under a belief that the Goodwin case still was the law.
Where there have been distributions approved by the court in an accounting or under an order as to which the time for appeal has expired, we perceive no difficulty. Under the rule we follow, each such order is final after the expiration of the time for appeal.[7]
In all cases where the trustees have acted in good faith in making distributions under the belief that the Pennsylvania rule still prevailed as to trusts created prior to the enactment of § 501.47, they should be protected. In such cases, where the income beneficiaries and remaindermen have accepted the allocation of the dividends without objection, they should be held to have ratified the action of the trustee.[8] Under the equitable doctrine of laches, they might well be barred from asserting any objection if time has elapsed since the distribution was made.[9]
In the case now before us, the stock dividends received that have not been distributed by the trustees should now be allocated according to statute as directed by the trial court. This decision should likewise apply to other trusts in which stock dividends have been received but have not actually been distributed to the beneficiary. In such cases, where a district court order now exists instructing the trustee to distribute stock dividends according to the Pennsylvania rule, prompt application should be made to the district court for a change of its instructions in accordance with this opinion.
The Pennsylvania court, in Catherwood Trust, supra, drew a distinction *137 between small dividends (holding that they should be allocated to income) and those of a more substantial nature. We find no room for such construction of our statute. Either the statute applies to all stock dividends or to none. Holding as we do that there is no constitutional bar to the retroactive application of the statute, it must be applied to all stock dividends coming within its purview.
We are also urged to overrule Goodwin v. McGaughey, supra, prospectively rather than to hold that a retroactive application of § 501.47 is constitutionally permissible. We are not convinced that this would be the best solution of this troublesome problem. We cannot escape a determination of the constitutional issue. We are convinced that it would be unsound to hold that the retroactive application of the statute is unconstitutional. That being so, there is no need for us to overrule the Goodwin case. That has been done by the legislature.
From an equitable point of view, allocation of stock dividends under the statute to principal does not constitute a complete loss to the income beneficiary. It is true that it does augment the corpus of the trust, but by doing so it provides a larger base from which income may be earned that eventually redounds to the benefit of the income beneficiary. It is true that the income beneficiary cannot sell such stock dividend, but he will eventually receive the income earned from it. In Bogert, Trusts and Trustees (2 ed.) § 859, p. 562, this thought is expressed in the following language:
"If a benefit coming from corporate stock, and to be distributed by a trustee, is of doubtful nature, and there is room for real argument whether it should be allotted to trust income, trust capital, or divided between the two, less injustice is apt to be accomplished by allocating the benefit to trust capital than by giving it in its entirety to trust income. If the dividend goes to trust capital, the life tenant will get the value of its use for his life, and the remainderman the balance of its value. Neither party will be excluded from enjoying the corporate benefit entirely. But, if the dividend is awarded to trust income, the remainderman is permanently excluded from any advantage thereunder."

CAPITAL GAIN DIVIDENDS FROM INVESTMENT TRUSTS
With respect to the capital gain dividends declared by regulated investment *138 companies,[10] the stipulated facts show that the predecessor trustees purchased 200 shares of Century Shares Trust, which is a Massachusetts trust[11] and not a corporation, and 300 shares of Manhattan Bond Fund Trust, which is a corporation. By exchange, the stock of the Manhattan trust became 217 1/3 shares of Diversified Investment Fund, Inc., a regulated investment company, also doing business as a corporation. As shareholders of these investment companies, the trustees received the following capital gain dividends:[12]

(1) (2) (3) (4) (5)
Fund Paid in Cash Paid in Cash Paid in Shares Cash Realized
 prior to after after 3-16-51 on Sale of
 3-16-51 3-16-51 Shares in
 Column (4)
Century $ 377.00 $ 1,123.22 58 shares $ 1,510.32
Manhattan 51.00 105.62 4 shares 24.62
Diversified ..... 76.00 5 shares 43.05
 ________ __________ __________
 $ 428.00 $ 1,304.84 $ 1,577.99

Regulated investment companies or, as they are sometimes called, investment *139 trusts, organized for the purpose of dealing in securities, are a development of comparatively recent years providing a diversification of investment for the investing public.[13] With respect to legal structure these funds or companies, as they are sometimes called, ordinarily are divided into three groups, namely, those where (1) the corporation which issues its stock or debentures invests the proceeds in securities of widely diversified kinds, where no strict trust is involved at all; (2) the corporation which deposits stocks with a trustee and issues certificates of interest in such stocks, where there is a true trust used as part of the investment set-up; (3) the Massachusetts or business trust which holds securities in trust and issues certificates of participation, giving the owners thereof equitable interests in the deposited securities.[14]
A Massachusetts trust has been defined as follows:
"* * * `Massachusetts trust' * * * is used generally to denote an unincorporated organization created for profit under a written instrument or declaration of trust, the management to be conducted by compensated trustees for the benefit of persons whose legal interests are represented by transferable certificates of participation, or shares."[15]
We are concerned here with corporate entities and a Massachusetts trust. During the time involved, these investment companies[16] distributed to the Gardner Trust the sum of $3,310.83 in so-called capital gain dividends. Of this sum, $3,010.54 was distributed by Century Shares Trust, a Massachusetts trust, and $300.29 was distributed by investment companies operating as corporations. Of the $3,010.54 distributed by Century, $2,633.54 was distributed subsequent to 1951, the effective date of § 501.47, and $377 was distributed prior to 1951. Of the $300.29 distributed by corporations, $249.29 was distributed subsequent to 1951 and $51 was distributed prior thereto.
The trial court found, without objection by the parties, that the distribution *140 made by the corporate investment companies prior to 1951, which were all cash dividends, must be allocated to income; that those declared subsequent to 1951, which were optional dividends,[17] must be allocated to income by virtue of § 501.47, subd. 4. The trial court refused to allocate the $377 received from Century prior to 1951, which were also cash dividends, to income under judicial precedent and also refused to allocate the $2,633.54 received from Century subsequent to 1951, which were optional dividends, to income under § 501.47, subd. 4. In short, the trial court was of the opinion that capital gain dividends received from a Massachusetts trust must be handled on a basis different from those received from an incorporated trust. The main thrust of the appeal centers on this question.
Earnings of a regulated investment company, whether a Massachusetts trust or a corporation, are of two kinds. Income received from securities held by the fund is distributed as income, and there is no difficulty with that. The idea that dividends paid out of earnings of regulated investment companies could be considered a capital gain instead of income probably had its inception in the Revenue Act of 1942, under which it was made possible to pay taxes on such distributions at a lower rate as capital gains than as income.[18] However, accounting for income tax purposes is not always the same as accounting for trust purposes.[19] Whether capital gain dividends constitute principal or income for trust purposes has caused a great deal of difficulty, and a lively debate has ensued. These dividends are derived from the profit *141 or gain made in the purchase and sale of securities due to the appreciation in value thereof while held by the fund. For discussions pro and con, see Shattuck, Capital Gain Distributions, Principal or Income?, 88 Trusts and Estates 160, and Young, A Dissent on Capital Gain Distributions, Id. 280.[20]
Determination of this question depends, at least in part, on what concept of ownership we are willing to employ. Is the shareholder in the fund merely one of many pooling his investment resources so as to obtain professional help in buying and selling securities under an arrangement in which each shareholder owns an undivided interest in all the securities held by the fund, or is his ownership limited to his shares in the investment company and the company as a separate legal entity the owner of the securities?
In an article by David C. Ewart, trust officer of The Merchants National Bank of Boston, 95 Trusts and Estates 1025, we find the following:
"In essence a share of a Mutual Fund represents a true participation in a pool of investments managed for the participants. This is true whether the shareholder has equitable title to an undivided fractional interest in the portfolio as in the case of a Fund which is a trust, or whether he has a fractional participation or fractional ownership which falls short of legal ownership as in the case of a Fund organized as a corporation. When a trustee properly buys shares of a Mutual Fund, he is buying investment management of and diversification of risk in a group of securities which on the whole he might himself buy. He should account for the dividends and avails of those shares, after the management charge has been taken out, just as he would if he had bought the underlying securities directly."
If we accept this concept of ownership, there is much to be said for holding that capital gain dividends are part of the capital and allocable to principal. However, it is doubtful that the argument cannot be rebutted. Many of the indices of ownership are absent. The ordinary purchaser of shares in such investment companies in all probability considers *142 his ownership limited to the shares he purchases. But we need not reach a final determination of this issue, for we believe that the legislature has left us with a workable solution without so doing.
Absent controlling statute,[21] the decisions that have considered this question are unanimous in holding that such capital gains constitute income and should be paid to the income beneficiaries of a trust if there is no direction in the instrument to the contrary.[22]
As far as we have been able to determine, none of the decisions, or any of the other authorities discussing this subject, draw any distinction between capital gain dividends distributed by a Massachusetts trust or a fund organized as a corporation.
Such capital gains are commonly distributed either in cash or, at the option of the shareholder, in cash or additional shares of the investment fund. Exercise of this option really amounts to the purchase of additional shares of the fund from the cash that the shareholder is entitled to receive. Cash or shares so accepted at the option of the trustee should therefore be treated alike.
The Uniform Principal and Income Act, § 5(1), provides:
"* * * Where the trustee shall have the option of receiving a dividend either in cash or in the shares of the declaring corporation, it shall be considered as a cash dividend and deemed income, irrespective of the choice made by the trustee."
Restatement, Trusts (2 ed.) § 236(c), reads:
"If the trustee has the option of receiving a dividend either in cash or *143 in shares of the declaring corporation, the dividend is income irrespective of the choice made by the trustee."
Minn. St. 501.47, subds. 3, 4, and 5, read:
"Subd. 3. All disbursements of corporate assets to the stockholders of a corporation, which are designated by the corporation as a return of capital or as a division of corporate property, shall be deemed principal.
"Subd. 4. Where a trustee shall have the option of receiving a dividend, either in cash or in the shares of the declaring corporation, such dividend shall be considered a cash dividend and shall be deemed income irrespective of the option selected by the trustee.
"Subd. 5. Subject to the provisions of subdivisions 2, 3, and 4, all dividends, including ordinary and extraordinary dividends and dividends payable in share or other securities or obligations other than those of the declaring corporation, shall be deemed income." (Italics supplied.)
The difficulty in this case, viewed in the light of the trial court's decision, is that our statute seems to deal only with dividends from a corporation.[23] It does not mention or expressly deal with a Massachusetts trust. As far as the dividends received from an investment company organized as a corporation are concerned, we agree with the trial court that § 501.47, subd. 4, controls. With respect to dividends received from the Massachusetts trust, the common law or decision law of the state is controlling if we hold that the statute is limited to corporate entities.
We have no controlling decision law. The only case relied on in part by any of the parties is In re Trust under Will of Koffend, 218 Minn. 206, 15 N.W. (2d) 590, where we recognized the rule that ordinarily gains in value of investments represent an increase of capital and are to be credited to principal rather than to income. That case is not controlling here. It simply states the general rule that an appreciation in *144 stock held by a trustee belongs to capital and not to income. The difference here is that the gain in value is not in the shares held by the trustee but in the shares held in the portfolio of the investment company and constituting its principal stock in trade. The exception to the general rule is noted in Rosenburg v. Lombardi, 222 Md. 346, 160 A. (2d) 601.
In Lovett Estate (No. 2) 78 Pa. D. & C. 21, 24, in holding that a capital gain dividend of Wellington Fund, Inc., an open-end investment company, should be treated as income, the court said:
"The portfolio assets of an investment company are not regarded as permanent assets of fixed capital by the managers of the company; the securities held are treated by the managers as funds to be turned over in the normal management of the business. Selling a portfolio asset is but a normal incident in the business."
In other words, the securities held which are bought and sold in the normal course of business of an investment company constitute, in a sense, its stock in trade. Frequently, what it makes on the buying and selling of such securities constitutes its main profit.
In Cohan and Dean, Legal, Tax and Accounting Aspects of Fiduciary Apportionment of Stock Proceeds: The Non-Statutory Pennsylvania Rules, 106 U. of Pa. L. Rev. 157, 183, we find the following statement:
"For apportionment purposes, it would seem unreal to view a share in a mutual fund as a pro rata ownership of the securities; rather, it would seem that mutual fund shares should be treated like any other investment, and that realized increments within the fund are income, for the mutual fund is, after all, in the business of investing money and spreading risk capital in such a way as best to afford a broad basis of investment."
Possibly, if we distinguish between the ownership of shares in the fund and ownership of the securities held by the fund, we will have less difficulty in arriving at a workable rule. Under § 501.47, subd. 4, our legislature has adopted the view that where dividends may be received in either cash or shares of a corporation, at the option of the trustee, they shall constitute income. We see no reason why this statutory provision *145 should not apply to capital gain dividends received from regulated investment companies. Nor is there any logical reason why the same rule should not apply to a Massachusetts trust operating exactly as does the corporate entity, even if we hold that the statute governs only dividends received from a corporation. There is much to be said for adopting a rule under which our case law is in harmony with our statutory law in the field of trust administration. There being no controlling decision in the state, we are now at liberty to apply the same rule to capital gain dividends received from a Massachusetts trust as the legislature has applied to an investment company organized as a corporation. We therefore hold that where capital gain dividends are distributed by a regulated investment company, whether organized as a Massachusetts trust or as a corporation, and may be received by the trustee at his option either in cash or in shares of the investment fund, such capital gain dividends constitute income and are to be distributed to the income beneficiary in a case such as we have here.
That portion of the trial court's order which directs that stock dividends received from corporations whose stock is held by the trustees be allocated to principal is affirmed.
That portion of the trial court's order which directs that capital gain dividends receivable in cash or stock at the option of the trustees from regulated investment companies whose shares are held by the trustees be allocated to principal is reversed.
MR. JUSTICE OTIS took no part in the consideration or decision of this case.
NOTES
[1] See, In re Trust Created by Warner, 263 Minn. 449, 117 N.W. (2d) 224; 32 Iowa L. Rev. 521.
[2] 3 Scott, Trusts (2 ed.) § 236.3; Bogert, Trusts and Trustees (2 ed.) § 850.
[3] For many of the problems arising in the application of the Pennsylvania rule, see Cohan and Dean, Legal, Tax and Accounting Aspects of Fiduciary Apportionment of Stock Proceeds: The Non-Statutory Pennsylvania Rules, 106 U. of Pa. L. Rev. 157 (this article was written before Catherwood Trust, supra); 91 Trusts and Estates 851; 89 Trusts and Estates 924; 32 Iowa L. Rev. 521.
[4] See, Restatement, 1948 Supp. Trusts, § 236; 3 Scott, Trusts (2 ed.) § 236.3, p. 1816.
[5] Restatement, Trusts (2 ed.) § 236.
[6] In re Trust Created by Warner, 263 Minn. 449, 117 N.W. (2d) 224.
[7] In re Trust Created by Warner, 263 Minn. 449, 117 N.W. (2d) 224; 2 Scott, Trusts (2 ed.) § 220.
[8] See, Bogert, Trusts and Trustees (2 ed.) § 942; Scullin v. Clark (Mo.) 242 S.W. (2d) 542, 29 A.L.R. (2d) 1024.
[9] See, Bogert, Trusts and Trustees (2 ed.) § 948.
[10] The definition of a regulated investment company in the 1954 Internal Revenue Code, 68A Stat. 268, 26 USCA, § 851, is in part:

"(a) For purposes of this subtitle, the term `regulated investment company' means any domestic corporation (other than a personal holding company as defined in section 542) 
"(1) which, at all times during the taxable year, is registered under the Investment Company Act of 1940, as amended (54 Stat. 789; 15 U.S.C. 80a-1 to 80b-2), either as a management company or as a unit investment trust, or
"(2) which is a common trust fund or similar fund excluded by section 3(c)(3) of such Act (15 U.S.C. 80a-3(c)) from the definition of `investment company' and is not included in the definition of `common trust fund' by section 584(a)."
[11] The stipulation of facts admits that Century, a Massachusetts trust, is a regulated investment company.
[12] In addition, ordinary cash dividends were received and allocated to income and paid to the life tenant, with which we are not concerned in this appeal.
[13] See, Rosenburg v. Lombardi, 222 Md. 346, 160 A. (2d) 601.
[14] 2 Bogert, Trusts and Trustees, § 249.
[15] Comment, 37 Yale L.J. 1103, 1105; 2 Bogert, Trusts and Trustees, § 291.
[16] We use the term "investment companies" indiscriminately, whether incorporated or a Massachusetts trust.
[17] Optional dividends permit the shareholder to elect whether to receive the dividends in cash or in additional shares of the fund purchased at the current value.
[18] See, Revenue Act of 1942, § 170(a), (26 USCA, § 851).

In an article on capital gain distributions, 88 Trusts and Estates 280, we find the following footnote: "Section 48(e) of the Revenue Act of 1936 was the predecessor to Supplement Q of the Internal Revenue Code. The `capital gains dividend' concept originated in Section 170(a) of the Revenue Act of 1942 but the incentive to distribute all income from all sources arose out of the 1936 legislation."
[19] See, In re Trust Created by Warner, 263 Minn. 449, 460, 117 N.W. (2d) 224, 232.
[20] See, also, 95 Trusts and Estates 1025; 90 Trusts and Estates 300.
[21] Wisconsin, by Wis. Stat. 1961, § 231.40(5)(a), and Florida, by Fla. Stat. 1961, § 690.06, have provided by statute that capital gain dividends shall be deemed principal. The Uniform Revised Principal and Income Act also so provides. This act has not been adopted by Minnesota or, as far as we can determine, by any other state.
[22] Matter of Appleby, 15 Misc. (2d) 200, 175 N.Y.S. (2d) 176; Matter of Byrne, 192 Misc. 451, 81 N.Y.S. (2d) 23; Matter of Bruce, 192 Misc. 523, 81 N.Y.S. (2d) 25; Matter of Hurd, 203 Misc. 966, 120 N.Y.S. (2d) 103; Matter of Snitzer, 33 Misc. (2d) 692, 226 N.Y.S. (2d) 279; Coates v. Coates (Mo.) 304 S.W. (2d) 874; Rosenburg v. Lombardi, 222 Md. 346, 160 A. (2d) 601; Lovett Estate (No. 2) 78 Pa. D. & C. 21.
[23] It is interesting to note that the definition of a regulated investment company in the Internal Revenue Code, like our statute, § 501.47, refers specifically to a corporation and not a Massachusetts trust. However, there seems to be no dispute but that a Massachusetts trust is a regulated investment company within this definition.